**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:17-CV-03910-AT |
| v. | ) ) | |
| AFFILIATED FM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND**
**COUNTERCLAIMS OF DEFENDANT**
**AFFILIATED FM INSURANCE COMPANY**

Defendant Affiliated FM Insurance Company ("AFM") hereby files this Amended Answer and Counterclaim in response to the Amended Complaint filed by Plaintiffs Sky Harbor Atlanta Northeast, LLC ("Sky Harbor") and Crestline Hotels and Resorts, LLC ("Crestline") on September 27, 2017, as follows:

**FIRST DEFENSE**

Defendant AFM responds to the individually numbered paragraphs of the Complaint as follows:

1.     The claims asserted in the Complaint are contained therein, and AFM

1

denies the allegations in this paragraph to the extent they are inconsistent with those claims.

2.      Paragraph 2 constitutes a prayer for relief, and AFM denies that Plaintiffs are entitled to any relief. AFM denies any remaining allegations in Paragraph 2.

## PARTIES, JURISDICTION AND VENUE

3.      AFM is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, but, for purposes of diversity jurisdiction, these allegations are admitted.

4.      AFM is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, but, for purposes of diversity jurisdiction, these allegations are admitted.

5.      Admitted.

6.      AFM admits that this Court has jurisdiction over this action and denies any remaining allegations in Paragraph 6.

7.      AFM admits that venue is proper in this Court and denies any remaining allegations in Paragraph 7.

8.      AFM admits that Sky Harbor is the current owner of the Hilton Atlanta Northeast. AFM denies the remaining allegations in Paragraph 8.

9.     AFM admits that Crestline and Sky Harbor entered into a Management Agreement dated October 18, 2013. The terms of that agreement are contained therein. AFM denies the remaining allegations in Paragraph 9.

10.    AFM admits it issued Virginia Standard Fire Insurance Policy No. WB720 to Crestline for the policy period of January 1, 2014, to January 1, 2015, and Virginia Standard Fire Insurance Policy No. WB879 to Crestline for the policy period of January 1, 2015, to January 1, 2016 (together, the "Policies"). The terms and conditions of the Policies are contained therein.  AFM further admits that Exhibit A appears to be a true copy of Policy No. WB879. AFM admits that a loss notice was sent by Marsh USA Inc. to AFM on September 21, 2015, and the terms of the loss notice are contained therein.  Except as so stated, AFM denies Paragraph 10.

11.    In response to Paragraph 11, AFM admits only that the terms and conditions of the Policies are contained therein.  Except as so stated, AFM denies Paragraph 11.

12.    AFM is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and, therefore, the allegations are denied.

13.    AFM admits that the hotel has 272 guest rooms and is branded as a

Hilton hotel.  Except as so stated, AFM denies Paragraph 13.

14.    Denied.

15.    AFM is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and, therefore, the allegations are denied.

16.    AFM admits that Algiere performed work at the hotel in 2015. Except as so stated, AFM denies Paragraph 16.

17.    AFM admits that Marsh USA, Inc. sent a loss notice concerning the hotel to AFM on September 21, 2015.  The terms of the loss notice are contained therein.  Except as so stated, AFM denies Paragraph 17.

18.    AFM admits that a Liberty Building Forensics Group Revised Water Damage Report, labeled Attorney Work Product and DRAFT, and dated February 5, 2016, is attached to the Complaint. Except as so stated, AFM denies Paragraph 18.

19.    AFM admits that Exhibit B is a document issued by Liberty Building Forensics Group that is titled Revised Water Damage Report Hilton Atlanta Northeast – Peachtree Corners, GA – LBFG Project No. 201574904.  The terms of that document are contained therein.  Except as so stated, AFM denies Paragraph 19.

20.    The terms and conditions of the Policies are contained therein.  AFM admits that it agreed to an extension for Crestline to submit a proof of loss. Except as so stated, AFM denies Paragraph 20.

21.    AFM admits that Crestline submitted a purported Sworn Statement in Proof of Loss which appears to have been executed on February 11, 2016.  The terms of that document are contained therein. Except as so stated, AFM denies Paragraph 21.

22.    AFM admits that on March 11, 2016, Sky Harbor sent AFM a purported "Sworn Statement in Proof of Loss." Except as so stated, AFM denies Paragraph 22.

23.    The terms and conditions of the Policies are contained therein.  Except as so stated, AFM denies Paragraph 23.

24.    Admitted.

25.    Denied.

26.    Denied.

27.    AFM admits that it requested information to investigate Crestline's claim. Except as so stated, AFM denies Paragraph 27.

28.    AFM admits that it conducted examinations under oath of five individuals involved with the hotel.  Due to scheduling issues, the examinations of

two of the individuals had to be split across two days. Except as so stated, AFM denies Paragraph 28.

29.     AFM admits that the letters included in the Complaint as Exhibits D and E are copies of the June 1, 2016, and June 2, 2016, letters received by AFM. AFM denies the remaining allegations of Paragraph 29.

30.     AFM admits that a copy of its January 6, 2017, letter is attached to the Complaint as Exhibit F. AFM denies the remaining allegations of Paragraph 30.

## COUNT I (DECLARATORY JUDGMENT)

31.     AFM incorporates its responses to Paragraphs 1 through 30 above as if each were fully and separately set forth herein.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

## COUNT II (BREACH OF CONTRACT)

36.     AFM incorporates its responses to Paragraphs 1 through 35 above as if each were fully and separately set forth herein.

37.     Denied.

38.     Denied.

39.    Denied.

40.    Denied.

41.    Denied.

## COUNT III (GEORGIA STATUTORY BAD FAITH O.C.G.A. 33-4-6(a))

42.    AFM incorporates its responses to Paragraphs 1 through 41 above as if each were fully and separately set forth herein.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    AFM admits that it sent a letter dated January 6, 2017, to Pierre Donahue, EVP & General Counsel for Crestline.   AFM denies the remaining allegations of Paragraph 49.

50.    Denied.

51.    Denied.

52.    Denied.

53.    Denied.

## COUNT IV (REFORMATION)

54.    AFM incorporates its responses to Paragraphs 1 through 53 above as if each were fully and separately set forth herein.

55.    The terms and conditions of the Policies are contained therein. Except as so stated, AFM denies Paragraph 55.

56.    The terms and conditions of the Policies are contained therein. Except as so stated, AFM denies Paragraph 56.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Denied.

AFM specifically denies that the Plaintiffs are entitled to any of the "Prayer for Relief" or damages requested in the six (6) numbered subparagraphs following the word "Wherefore" at the conclusion of Plaintiffs' Complaint. AFM denies that Plaintiffs are entitled to any relief or damages against this Defendant whatsoever.

## SECOND DEFENSE

Defendant denies each and every allegation, statement, matter, or thing in the Complaint unless expressly admitted herein.

## THIRD DEFENSE

Part or all of Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

## FOURTH DEFENSE

Plaintiffs failed to fulfill conditions precedent to filing suit, including, among others, providing timely notice, submitting a Proof of Loss in accordance with the Policies, producing for examination documents and materials requested by AFM, and exhibiting to AFM's designated representative the remains of the allegedly damaged property.

## FIFTH DEFENSE

Plaintiffs' claim for insurance coverage under Virginia Standard Fire Insurance Policy No. WB720 to Crestline, as the Named Insured, for the policy period of January 1, 2014, to January 1, 2015, and Virginia Standard Fire Insurance Policy No. WB879 to Crestline, as the Named Insured, for the policy period of January 1, 2015, to January 1, 2016 (together, the "Policies") does not satisfy the contract requirements.

## SIXTH DEFENSE

Plaintiff Sky Harbor's claims fail as Sky Harbor is not insured under the Policies and is not a party to the insurance contract.

## SEVENTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because of the doctrine of fortuity.

## EIGHTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because the claimed losses occurred prior to the inception of either Policy period.  The hotel has reportedly had widespread leakage and indoor moisture problems since its 1986 construction.

## NINTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because of the loss-in-progress rule.

## TENTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because the claimed losses did not constitute a single discrete event.

## ELEVENTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because the claimed losses do not exceed the applicable deductibles of the Policies.

## TWELFTH DEFENSE

Plaintiffs' claims fail, in whole or in part, because of the doctrine of laches.

**THIRTEENTH DEFENSE**

Plaintiffs' claims fail, in whole or in part, because of the doctrine of unclean hands.

**FOURTEENTH DEFENSE**

Plaintiffs' claims fail, in whole or in part, because of the doctrine of estoppel.

**FIFTEENTH DEFENSE**

Plaintiffs' claims fail, in whole or in part, because of the failure to mitigate damages.

**SIXTEENTH DEFENSE**

Plaintiffs' claims fail, in whole or in part, because of the Insured's delay, contributory neglect, and failure to use all reasonable means to save and preserve property after its loss.

**SEVENTEENTH DEFENSE**

Plaintiffs' claims fail, in whole or in part, because the claimed losses are excluded from coverage.

**EIGHTEENTH DEFENSE**

In the event that it were determined that coverage exists under either of the Policies, which is specifically denied by AFM, then, in that event, any recovery

under the Policies would be limited by the Policies' provisions relating to the applicable Sub Limits and Extensions of Coverage Sub-Limits.

## NINETEENTH DEFENSE

The Policies are void due to fraud or misrepresentations made by the Insured, as the Insured willfully concealed or misrepresented material facts and circumstances concerning the claim at issue.

## TWENTIETH DEFENSE

AFM pleads all of the Policies' terms, conditions, and all other provisions that may apply as a defense to Plaintiffs' Complaint, or that subsequently may be determined to apply based on discovery in this action or other investigation.  This includes, without limitation, all of the terms of the Policies, whether titled coverages, conditions, definitions, exclusions, endorsements, declarations, or by any other name.

## TWENTY-FIRST DEFENSE

AFM reserves the right to raise additional defenses that subsequently may be determined to apply based upon discovery in this action or other investigation.

## TWENTY-SECOND DEFENSE

AFM has a reasonable basis or grounds to contest coverage for the Plaintiffs' alleged claims, and, therefore, Plaintiffs' claim for interest and costs in

bringing this litigation must fail.

## TWENTY-THIRD DEFENSE

Third parties, for whom AFM cannot be held liable, are responsible for Plaintiffs' claims, in whole or in part.

## <u>COUNTERCLAIMS</u>

In accordance with Federal Rule of Civil Procedure 13, AFM files the following Counterclaims:

1.      Counterclaim Plaintiff AFM is a commercial property insurer that issued the following policies to Crestline Hotels & Resorts, LLC: (1) Virginia Standard Fire Insurance Policy No. WB720 for the policy period of January 1, 2014 to January 1, 2015; and (2) Virginia Standard Fire Insurance Policy No. WB879 for the policy period of January 1, 2015 to January 1, 2016 (collectively, the "Policies").

2.      Counterclaim Defendant Crestline Hotels & Resorts, LLC ("Crestline") is the Named Insured on the Policies and operates as a hotel management company for multiple hotels, including a hotel located at 5993 Peachtree Industrial Boulevard, Norcross, Georgia (the "Hotel").

3.      Counterclaim Defendant Sky Harbor Atlanta Northeast, LLC ("Sky Harbor") is the owner of the Hotel.

4.      Counterclaim Defendants Crestline and Sky Harbor have submitted to the venue and jurisdiction of this Court, having filed their Complaint and participated without objection in the instant action.

5.      Venue is proper in this Court under 28 U.S.C. § 90 and because these Counterclaims arise out of the same transaction and/or occurrence alleged in Crestline and Sky Harbor's Complaint.

6.      The Court has original subject matter jurisdiction over Crestline and Sky Harbor's Complaint in this matter under the provisions of 28 U.S.C. § 1332. The Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367.

7.      Sky Harbor purchased the Hotel on November 5, 2013, for $16.3 million.

8.      Crestline agreed to manage the Hotel and executed a Management Agreement with Sky Harbor to that effect on October 18, 2013.

9.      The Hotel was an insured location in the Policies.

10.     To maintain the Hotel as part of the "Hilton Hotels" brand after purchase, Hilton Hotels required Sky Harbor to undertake a Product Improvement Plan ("PIP") to renovate the Hotel.

11.     After Sky Harbor purchased the Hotel, Sky Harbor undertook to

renovate the Hotel per the Hilton Hotels PIP.

**Crestline and Sky Harbor claim they discovered mold
in September 2015.**

12.    On or about September 21, 2015, Crestline reported "mold found during renovations" at the Hotel.

13.    AFM promptly acknowledged receipt of the claim, and AFM representatives met with representatives of Crestline and Sky Harbor at the Hotel the next day.

14.    AFM communicated with Crestline and Sky Harbor continuously over the course of the next fifteen months to investigate the claim.

15.    On February 11, 2016, Crestline submitted a Sworn Statement in Proof of Loss to AFM.  On March 11, 2016, Sky Harbor submitted an identical Sworn Statement in Proof of Loss to AFM (collectively, the "Proofs of Loss").

16.    The Proofs of Loss listed over $20 million in alleged water and mold damage to the Hotel that Crestline and Sky Harbor allegedly discovered in September 2015.

17.    In the Proofs of Loss, Crestline and Sky Harbor alleged that in September 2015, they discovered the following problems, among others, at the Hotel:

      a.  Roof leaks;

b.  Mold and water damage to the guestrooms' drywall;

c.  Cladding leaks;

d.  Pipe leaks;

e.  Window leaks;

f.  Leaks in the exterior façade;

g.  Bathtub leaks;

h.  Drain leaks;

i.  Water damage to the fan coil units;

j.  Electrical wiring damage;

k.  Phone line damage; and

l.  Damages to the guestroom furniture.

18.     Crestline and Sky Harbor further claimed that they suffered business interruption losses during the repair and remediation of the alleged damage.

19.     At all times during the claim investigation, Crestline and Sky Harbor maintained that they discovered the purported damage to the Hotel in September 2015.  For example:

a.  On September 21, 2015, Crestline's insurance broker and agent, Marsh, emailed AFM a "First Report of Loss."  An attachment to the email stated that the claim was for "Mold found during renovations." (Exhibit 1);

b.  On September 22, 2015, AFM representatives traveled to the Hotel

and, accompanied by representatives of Crestline and Sky Harbor, visually observed rooms selected by Crestline and Sky Harbor on the 9th and 10th floors of the Hotel.  During that visit, representatives for Crestline and Sky Harbor stated that mold had been discovered during the September renovation of the 9th and 10th floors by a general contractor, Algiere Construction Services, Inc.;

c. On September 30, 2015, Marsh emailed AFM confirming that the reported loss was for "mold [that] was discovered during renovation to hotel rooms" (Exhibit 2);

d. On February 11, 2016, and March 11, 2016, Crestline and Sky Harbor (respectively) submitted identical sworn Proofs of Loss stating that "In September 2015, while beginning renovations on the top two floors, mold and water damage was discovered"; and

e. On February 11, 2016, Crestline and Sky Harbor sent a letter to AFM and referenced the "mold damage discovered during renovations in September 2015," stated that the damage "was not discovered until renovations to the Hotel in September 2015," and again referenced "the mold growth discovered during the renovations in September 2015" (Exhibit 3).

20.    In the present lawsuit, Crestline and Sky Harbor have continued to allege that they discovered the purported damage to the Hotel in September 2015. For example:

a. Crestline and Sky Harbor state in Paragraph 16 of the Complaint that "Renovation on the guest rooms began in September 2015 on the 9th and 10th floors.  Water intrusion and mold damage to the Hilton Hotel was discovered almost immediately when the vinyl wall coverings were removed";

b. Crestline and Sky Harbor allege in Paragraph 19 of the Complaint that the event causing the damage to the Hotel was a rainwater event on August 22, 2015 and August 23, 2015 during which 2.2 inches of rain

fell in the area of the Hotel;  and

c.  In response to AFM's Interrogatory No. 4 to Crestline, in which AFM asked for various details about Crestline's claim, Crestline answered that it discovered the claimed damage, "On or about September 21st, 2015."  Crestline also answered that the damage was discovered by "Jeff Miller Superintendent of Robert Algiers [sic]."  Pierre Donahue, Crestline's General Counsel, verified Crestline's interrogatory responses under oath.

**AFM investigates Crestline's and Sky Harbor's claims.**

21.    Prior to this lawsuit, and as a direct result of, and in reliance on, Crestline and Sky Harbor's representations, AFM hired consultants, including engineers, mold specialists, and accountants, to investigate the reported claim.  In so doing, AFM expended in excess of $500,000.

22.    AFM, as part of its claim investigation, requested from Crestline and Sky Harbor information and documents, among others, referring or relating to the condition of the Hotel, any investigations into the conditions of the Hotel, and the discovery of the alleged damages.

23.    During the claim investigation, Crestline and Sky Harbor represented to AFM that Crestline and Sky Harbor had produced all documents responsive to AFM's requests.

24.    AFM relied on Crestline's and Sky Harbor's claims and representations—including that the Hotel's poor conditions were discovered in

September 2015—in conducting an investigation of the purported damages to the Hotel.

25.     Crestline's and Sky Harbor's claims and representations to AFM, however, were fraudulent.

### Crestline and Sky Harbor knew of the Hotel's poor conditions long before September 21, 2015—the date of alleged discovery.

26.     Crestline and Sky Harbor knew of the poor condition of the Hotel— including the faulty exterior, water leaks, moldy rooms and furniture, improper ventilation and air filtration, dilapidated bathtubs and vanity splashes, roof leaks, and other conditions asserted in their Proofs of Loss—long before September 21, 2015, when they represented they discovered the damage.

27.     Crestline's and Sky Harbor's fraudulent misrepresentations are evidenced, in part, by the following:

      a. On October 17, 2013, which was nearly two years earlier, and before Sky Harbor even purchased the Hotel, during the pre-purchase due diligence phase, Crestline found evidence of mold in guestrooms. Chris Flagg, a representative at Crestline, emailed Frank Yuan, a principal at Sky Harbor, notifying Yuan that Crestline "found evidence of mold in some guestrooms" that "could be due to moisture seepage through the exterior brick façade."  Mr. Flagg also sent the October 17, 2013, email identifying the mold damage to Pierre Donahue—Crestline's General Counsel and the person that signed Crestline's Proof of Loss. (Exhibit 4)

      b. During AFM's claim investigation, however, Crestline and Sky Harbor wrote a letter to AFM stating that "[d]uring the due diligence

leading to Sky Harbor's purchase of the Hotel, representatives of Sky Harbor inspected conditions at the Hotel and did not observe any evidence of mold problems in the Hotel." (*See,* Exhibit 3)

c. More than a year before the alleged discovery, on July 29, 2014, Sky Harbor's general contractor, Robert Algiere of Algiere Construction, emailed Sky Harbor explaining why his company could not lower its bid to renovate the Hotel because the Hotel had "problems like leaks, mold, etc." (Exhibit 5)

d. On August 1, 2014, representatives at Sky Harbor and Crestline met to discuss the leaks and mold at the Hotel.  As part of that meeting, Crestline shared an agenda that listed "Significant concerns about existing conditions at the property" as an agenda item and explained that the "solution will require significant repairs to the window seals and dry rot under bathtubs." (Exhibit 6)

e. On August 1, 2014, in advance of the meeting to discuss the leaks and mold at the Hotel, Crestline also sent a PowerPoint to the meeting participants, including Frank and Jerome Yuan of Sky Harbor that was titled "Existing Guestroom Conditions." The 2014 Crestline PowerPoint included several guest reviews and pictures highlighting the mold problems in the guestrooms.  The 2014 Crestline PowerPoint italicized the following phrases from the guest reviews of the Hotel:

    i. "There is no way this should be labeled Hilton";

    ii. "Moldy";

    iii. "Water damage";

    iv. "I can say this Hilton is by far the worst hotel I have ever stayed at";

    v. "Damp smell";

    vi. "This hotel is worst hotel that I have ever booked in my life";

vii. "Hallway smelled like sewage";

viii. "Also a family member and her baby was in the shower and the tub and shower tile fell on her";

ix. "They should be embarrassed to have this property in the portfolio";

x. "Odor was reprehensible";

xi. "Sour smelling";

xii. "Smell of the room was an old musty smell"; and

xiii. "Hallway immediately smelled musty, moldy, and old." (Exhibit 7)

f. On August 19, 2014, Henk Pouderoyen of Hotel Renovation Solutions, project manager for the Hotel's renovation, noted "much water damage to wall" around the bathtubs in the guestrooms. (Exhibit 8)

g. Mr. Pouderoyen, as of August 22, 2014, recognized that "the condition of the existing tubs is such that they cannot be left as is. They were mounted on the metal studs and suspended off the floor. Rust to these metal studs has caused most all to sink and list into various directions and cause serious leaks." (Exhibit 9)

h. Mr. Pouderoyen completed a report on or about August 25, 2014 to Sky Harbor noting that "ALL windows will need new seals or caulking treatment to stem water infiltration." (Exhibit 10)

i. On September 5, 2014, Marcy Adams (Crestline's general manager for the Hotel) wrote to Sky Harbor and attached pictures of bathtubs at the Hotel, noting that "Because the tile is cracked, the water continues to get behind the caulk/grout and creates mold and mildew." (Exhibit 11)

j. On September 23, 2014, Jimmy Wei emailed Sky Harbor representatives to discuss the "Tub issue" that Mr. Wei listed as an "urgent and important issue" at the Hotel. (Exhibit 12)

k. On September 30, 2014, Lorie Remington (a project manager at the Hotel and representative of Sky Harbor) emailed Mr. Pouderoyen that she "learned this morning that 72-112 of the Hilton Norcross rooms have wood rot in the restrooms." Mr. Pouderoyen responded the next day that he was aware of the issue "but believe[d] it is not wood rot, but rotted metal stubs in [the] bathroom surround." (Exhibit 13)

l. In 2014, Mr. Pouderoyen and Ms. Remington sought a bid from Finite Reimaging, a construction company, to repair the water infiltration issues at the Hotel. On October 13, 2014, Finite Reimaging prepared a bid of approximately $300,000 to address "exterior water infiltration . . . at the Hilton Northeast property." (Exhibit 14)

m. Representatives of Sky Harbor attended a Shareholders' Meeting on November 3, 2014, that included a PowerPoint budgeting $500,000 to repair the leaky exterior façade of the Hotel. (Exhibit 15)

n. On December 12, 2014, Mr. Pouderoyen sent an email to Finite Reimaging stating that "we need to address a number of potential issues that contribute [to the] water intrusion; window frame, caulking, faulty flashing and resealing the brick façade." (Exhibit 16)

o. On December 12, 2014, Mr. Algiere emailed representatives of Sky Harbor with their "findings" from their visit to the Hotel. Among those findings, Mr. Algiere wrote: "Model Room 805 progress has started – severe mold infestation on all bathroom walls mandating complete drywall and some framing removal for replacement. Refer to attached photos." (Exhibit 17)

p. In February 2015, Finite Reimaging performed work on two sample rooms at the Hotel, room 600 (6th floor) and 1017 (10th floor). Finite Reimaging reported "high mold presence" in both rooms. (Exhibit 18)

q. On March 3, 2015, Finite Reimaging submitted its "Water Intrusion

Report."   The report stated that "there are multiple contributing factors to the water intrusion which are as follows; failure of construction sealants, failure of window glazing gaskets and the lack of a water repellant sealer at the masonry substrates."   The report noted that "the building is taking on significant water during a Wind Driven Rain event" and that "multiple areas of the building have visible efflorescence and mildew." The report also stated that "the building is allowing moisture to continually intrude at varying levels all throughout the property," and that conditions in the Hotel created "a breeding ground for mold."   The report was shared with multiple representatives of Sky Harbor and the general contractor, Algiere Construction. (Exhibit 19)

r.   An invoice from Algiere Construction dated March 5, 2015, reports extra charges incurred in order to "scrape mold," "replace some damaged drywall under window from water intrusion," and "remove top layer of sheetrock in complete bathroom due to mold deterioration" in a model room Algiere Construction was creating for the Hotel renovation. (Exhibit 20)

s.   A June 12, 2015, email from Robert Algiere to Sky Harbor's project manager referenced an inspection "with specialists in the sealing and glazing industry . . . to determine to what extent this building is failing to withhold water intrusion" and noting "massive failure of the grout pack on the brick [exterior]." (Exhibit 21)

t.   On September 9, 2015, Frank Lin (Assistant Project Manager for Sky Harbor) sent an email to Algiere stating that "For the MOLD REMEDIATION, please allow me explain to the ownership, we will make decision within 48 hours." (Exhibit 22)

u.   On September 11, 2015, Sky Harbor's representative Mr. Lin, wrote to Jim Giles of Preferred Environmental Solutions, Inc. (Sky Harbor's chosen mold remediation company), asking "what is the time frame or schedule [for] working on the 10th FL, Algiere construction is concern about the schedule." (Exhibit 23)

28.   As part of its claim investigation, AFM requested from Crestline and

Sky Harbor all documents and communications related to the condition of the Hotel, including the leaks and mold at the Hotel.

29.     On August 24, 2016, during AFM's claim investigation, Crestline and Sky Harbor stated that they had "assembled all responsive documents" and that they believed "all requested documents ha[d] been produced, and there is no further reason for FM to use allegations of lack of documentation as an excuse for its failure to complete its investigation and pay this claim." (Exhibit 24)

30.     Crestline and Sky Harbor, however, had withheld from AFM Exhibits 4-23 referenced in Paragraph 27 and many other documents evidencing that Crestline and Sky Harbor knew about the mold and water damage at the Hotel before they began their insurance fraud.

**Crestline and Sky Harbor fraudulently omitted from their Proofs of Loss specific information regarding the causes of the conditions at the Hotel.**

31.     Both Proofs of Loss incorporate a February 5, 2016, report from Liberty Building Forensics Group that purports to outline certain causes of damages and the estimated amount of the alleged damages.

32.     Crestline and Sky Harbor asserted in the Proofs of Loss that "[t]he origin of the loss is described in the Liberty Report."

33.     On November 20, 2015, however, Liberty provided Crestline and Sky Harbor with findings that listed multiple causes to the water leaks and mold at the

Hotel.  Plaintiffs did not provide Liberty's November 20, 2015 report to AFM.

34.     Crestline and Sky Harbor concealed or condensed Liberty's initial findings in an effort to deceive AFM.  For example:

    a.  On November 16, 2015, counsel for Crestline and Sky Harbor emailed Mr. Pouderoyen, stating, "Liberty has so far done a good job at cataloging a myriad of problems with the building.  What I care about however is making sure that liberty focuses on only the building problems that are 'compensable' from an insurance standpoint. (And providing us the rest of the information in a separate letter.)" (Exhibit 25)

    b.  On December 23, 2015, counsel for Crestline and Sky Harbor emailed Frank Yuan at Sky Harbor, stating that "When we received Liberty's initial causation report, they had provided a series of deficiencies that the insurance company would have used in a way to create an extraordinary amount of deductibles that would apply to our claim. This of course defeats the purpose of maximizing our claim amount. My plan was to work with Liberty to get rid of their analysis that the insurance company would claim would require a ridiculous number of Dr. balls." [sic]  (Exhibit 26)

    c.  On January 6, 2016, counsel for Crestline and Sky Harbor notified Mr. Pouderoyen by email of Crestline and Sky Harbor's intent to find a way around the Policies' mold provision:  "The mold category is the most obvious category for its placement.  The challenge is that we have $1 million coverage in the mold category and $25 million water damage coverage.  I am trying to work with our Atlanta attorney to convince them and Liberty that we can classify this as a water damage loss relating to the furniture. Mold, as we all know, starts from water in some form. A liquid or a vapor.  To me, we have very little to lose by making the claim." (Exhibit 27)

35.     Crestline and Sky Harbor continued to misrepresent the discovery, timing, and extent of their alleged losses in their Proofs of Loss and throughout

AFM's claim investigation.

36.     AFM relied on these misrepresentations and incurred over $500,000 in consulting fees and other expenses to investigate Crestline's and Sky Harbor's fraudulent claims.

**Crestline and Sky Harbor conspire to bring their fraudulent claims against AFM.**

37.     Crestline and Sky Harbor have been working, and continue to work, in concert with each other to prosecute their fraudulent claims.

38.     Both Crestline and Sky Harbor were aware of the mold and water damage at the Hotel as early as the due diligence period before Sky Harbor purchased the Hotel.

39.     Both Crestline and Sky Harbor conspired to hide from AFM their knowledge of the Hotel's conditions; for example, Crestline and Sky Harbor, acting through the same counsel, withheld Exhibits 4-23 and other documents from AFM during AFM's investigation of the claim and the conditions at the Hotel.

40.     Crestline and Sky Harbor submitted identical Proofs of Loss claiming identical damages and citing identical documents in support, and they did so with full knowledge that their claims were fraudulent.  For example, in a September 19, 2016, email, counsel for Crestline and Sky Harbor acknowledged that the two parties' business interruption losses were dissimilar, noting "that everyone is in

agreement that any recovery under the FM Policy for business interruption losses in connection with Crestline's management fee is likely to be very small." (Exhibit 28)

41.     Crestline and Sky Harbor agreed to pursue their claim against AFM. That agreement was subsequently memorialized in the September 19, 2016, email that stated, "Per the agreement, Sky Harbor [would] have complete decision-making authority regarding the pursuit of the FM Claim," but that "Crestline will cooperate in the prosecution of the claim."  (Exhibit 28)

## COUNT I: FRAUD

42.     AFM hereby incorporates by reference and re-alleges in Count I, as if fully stated herein, each and every allegation of paragraphs 1 through 41 of these Counterclaims.

43.     Crestline and Sky Harbor materially misrepresented or concealed the discovery, timing, and extent of the conditions at the Hotel that Plaintiffs submitted as their claimed damages.

44.     Crestline and Sky Harbor materially misrepresented to AFM that the mold and water damage was discovered in September 2015.

45.     Crestline and Sky Harbor made these misrepresentations and omissions with knowledge that they were false or with reckless disregard of the

truth thereof.

46.    Crestline and Sky Harbor intended to and did deceive AFM with these misrepresentations and omissions.

47.    AFM acted upon these misrepresentations and omissions in reasonable reliance upon their veracity, in that AFM expended substantial sums to investigate and adjust the claimed losses.

48.    As a proximate result thereof, AFM suffered damages in excess of $500,000 in the investigation and adjustment of this claim.

## COUNT II: CIVIL CONSPIRACY

49.    AFM hereby incorporates by reference and re-alleges in Count II, as if fully stated herein, each and every allegation of paragraphs 1 through 48 of these Counterclaims.

50.    Crestline and Sky Harbor reached an agreement and acted in concert to perpetuate the aforementioned fraud on AFM.

51.    Both Crestline and Sky Harbor sought and continue to claim over $20 million in purported damages to the Hotel under false pretenses; both Crestline and Sky Harbor were aware of the conditions at the Hotel before submitting their fraudulent claims.

52.    As a result of Plaintiffs' conspiracy to commit fraud, AFM has

suffered damages in excess of $500,000.

## COUNT III: ATTORNEY'S FEES

53.    AFM hereby incorporates by reference and re-alleges in Count III, as if fully stated herein, each and every allegation of paragraphs 1 through 52 of these Counterclaims.

54.    By conspiring and perpetrating the fraud and alleged herein and pursuing the instant case, Plaintiffs have acted in bad faith, been stubbornly litigious, and caused AFM unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, thus justifying an award of all expenses of litigation, including attorney's fees.

## JURY DEMAND

AFM hereby demands a trial by jury for all issues so triable that are raised in this Amended Answer, Affirmative Defenses, and Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered the Complaint and asserted the aforementioned Counterclaims, AFM respectfully requests:

    a.  that Plaintiffs' Complaint be dismissed with prejudice;

    b.  that each and every prayer for relief in Plaintiffs' Complaint be denied;

    c.  that judgment be entered in favor of AFM against Crestline and Sky

Harbor on the claims asserted in the Complaint as well as the Counterclaims asserted by AFM, with costs and attorney's fees assessed against Plaintiffs;

d. that the Policies be declared void and the Court grant all available relief to AFM as a result; and

e. for such other relief to which AFM is entitled or that the Court may deem just and proper.

Respectfully submitted this 7th day of September, 2018.

CARLTON FIELDS JORDEN BURT, P.A.


By: */s/ James V. Chin*
　　James V. Chin
　　Georgia Bar No. 124827
　　jchin@carltonfields.com
　　Justan C. Bounds
　　Georgia Bar No.: 339789
　　jbounds@carltonfields.com
　　Amanda D. Proctor
　　Georgia Bar No.: 776848
　　aproctor@carltonfields.com

1201 West Peachtree Street
Suite 3000
Atlanta, GA 30309
Telephone: (404) 815-3400
Fax: (404) 815-3415

*Attorneys for Defendant*
*Affiliated FM Insurance Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 7, 2018, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Keith S. Hasson
Michael F. O'Neill
Hasson Law Group, LLP
3379 Peachtree Road, NE
Suite 625
Atlanta, GA 30326

Raymond Steinbrecher, Esq.
RAYMOND STEINBRECHER PLLC
1016 Thomas Drive, Suite 103
Panama City Beach, Florida, 32408

This 7th day of September, 2018.

*/s/ James V. Chin*
James V. Chin