UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SKY HARBOR ATLANTA | ) | |
| NORTHEAST, LLC, and | ) | |
| CRESTLINE HOTELS & | ) | |
| RESORTS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| *vs.* | ) | NO.: 17-cv-03910-AT |
| | ) | |
| AFFILIATED FM INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STRIKE, PURSUANT TO FRCP 12 (f), OR TO DISMISS, PURSUANT TO FRCP 12(b)(6), DEFENDANT'S "AMENDED ANSWER AND COUNTERCLAIM"

The Plaintiffs, **SKY HARBOR ATLANTA NORTHEAST, LLC** and

**CRESTLINE HOTELS & RESORTS, LLC,** have moved to strike, pursuant to

Federal Rule of Civil Procedure ("FRCP") 12(f) as "redundant," "impertinent," or

"immaterial,"[1] or, alternatively, to dismiss, pursuant to FRCP 12(b)(6), for failure to

---

[1] FRCP 12 (f) provides in relevant part: "The court may strike from a pleading an insufficient defense or ***any redundant***, ***immaterial, impertinent,*** or scandalous ***matter.***" [Emphasis Added]

state a claim, **Defendant Affiliated FM Insurance Company's** recent "Amended Answer and Counterclaim." [Dkt. #73] (The Defendant is referred to herein as "FM" or the "Insurer.")

## I.   INTRODUCTION.

In its continuing struggle to avoid payment of valid, multi-million dollar claims under its casualty insurance policy,[2] FM seeks--330 days after compulsory counterclaims should have been filed and 15 days after entry of the Amended Scheduling Order [Dkt. #70]--to dramatically expand the scope of this litigation by asserting two nonexistent Counterclaims.

The fraud Countclaim is not pled with particularity and omits the critical element of injurious reliance, and it should have been asserted, if at all, as a compulsory counterclaim at the time of FM's initial Answer [Dkt. #4]. The civil conspiracy Counterclaim asserts a non-existent action. There is simply no separate tort, under Georgia law, for "civil conspiracy." Thus, the attempted "counterclaim"

---

[2] There is no question that the policy at issue covered mold damage: "This policy is ***extended to cover the direct physical loss of damage to insured property caused by or resulting from fungus, mold or mildew***, when fungus, mold or mildew is the direct result of direct physical loss or damage insured by this policy. This coverage includes any cost or expense to clean up, remove, constrain, treat, detoxify or neutralize fungus, mold or mildew from insured property resulting from such loss or damage." Insurance Policy, Page 11 of 27, para. 18.

necessarily fails to state a claim upon which relief can be granted, as a matter of fact and law.

As an introductory matter, it should be clear that the proposed counterclaims are "compulsory counterclaims." FRCP Rule 13(a) requires that a defendant, such as the Insurer, assert any compulsory counterclaim in its Answer.[3] Although not stated explicitly in Rule 13, "[a] failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim." 6 C. Wright, A. Miller, and M.K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1417 (3d ed.).

The compulsory counterclaim standards of Rule 13(a) are, then, applied to belated counterclaims by Rule 13 (e). In *Stahl v. Ohio River Co.*, 424 F.2d 52 (3d Cir.1970), the Third Circuit outlined the proper operation of Rule 13(e). In *Stahl*, a family sued a barge's owner for injuries suffered in a collision between their motorboat and the barge, which, in turn, joined the barge operator as a third party

---

[3] FRCP 13 (a)(1), defining a "Compulsory Counterclaim," has long provided, in its essential elements: "(1) A pleading ***must state as a counterclaim any claim*** that—at the time of its service—the pleader has against an opposing party if the claim: (A) ***arises out of the transaction or occurrence that is the subject matter of the opposing party's claim***; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." [Emphasis supplied.] Thus, the Insurance Company's putative "counterclaim" is, plainly, a "compulsory," not a "permissive" counterclaim. The claims for fraud and so-called civil conspiracy arise from the identical "transaction[s] or occurrence[s]" on which the Plaintiffs have sued—the insurance policy on the Hotel and the Hotel's mold remediation costs.

defendant.  The third-party defendant then filed a pleading against the plaintiffs

entitled a "counterclaim."   The Third Circuit provided an overview of federal

counterclaim practice:

> The counterclaim procedure in the federal courts is set forth in
> Rule 13 of the Federal Rules of Civil Procedure. Rule 13 refers only to
> claims which have "matured" at the time they are pleaded as
> counterclaims. ... ***The crucial time for determining whether a claim
> may be filed as a counterclaim under the Rule 13(a) and Rule 13(b)
> is the time pleadings are filed.*** ... Claims which have "matured" after
> the filing of a party's pleadings in the action may be pleaded ***with the
> permission of the court under Rule 13(e).*** But under the specific
> language of Rule 13(e) ***such permission may be given only if the claim
> is a "matured" one at the time permission is requested.***

As set forth below, the claims proposed now, by the Insurer, had "matured" and

should have been asserted at the time of answer.  Additionally, leave of court was

required as a prerequisite to belated assertion.

## II.     THE DEFENDANT'S BELATED EFFORT TO FILE ITS "AMENDED ANSWER AND COUNTERCLAIM" SHOULD BE STRUCK AS "REDUNDANT," "IMPERTINENT," AND "IMMATERIAL, " BECAUSE PRIOR PERMISSION OF THIS COURT WAS NOT OBTAINED.

The Insurer's two "counterclaims" can now be asserted under FRCP 13(e) and

15(a)(2), if they had any legal substance, ***only*** after prior approval of this Court.  FM

has ignored, totally, the plain requirement for prior (or, at a minimum, simultaneous)

leave of Court before filing.  This failure to obtain leave actually permeates all

aspects of Plaintiff's objection—both the effort to strike the pleading and to dismiss the claims.

The Insurer's failure to seek leave is sufficient reason for the pleading to be stricken, because the attempted pleading meets the definitional standards of Rule 12(f): "Immaterial" means that the matter has *no bearing* on the controversy before the court. . . .  If there is *any* doubt as to whether the allegations might be an issue in the action, courts will deny the motion. *Id.* [Emphasis in the original.]  For example, *Graveling v. Castle Mortgage Company,* 631 Fed Appx. 690, 696 (11th Cir. 2015) (*per curiam*), which appears to be the Eleventh Circuit's most recent analysis of Rule 12(f), found that the district court did not abuse its discretion in striking an affidavit as "immaterial. " The stricken matter was said to have no relevance to the underlying controversy.  *See also Stephens v. Georgia Department of Transportation*, 134 Fed. Appx. 320, 322-323 (11th Cir. 2005) (*per curiam*).   Similarly, the proposed counterclaims of FM have, as a matter of substantive law, no "relevance" to the underlying litigation.

"Impertinent" has been defined as allegations that are not responsive to, or are irrelevant to, the issues and which are inadmissible as evidence. *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) (Carter, J.).  The

"civil conspiracy" claim is "impertinent," because it does not exist; the fraud claim is "impertinent," because FM cannot plead its essential elements.

"Redundant" matters are "characterized by similarity or repetition." MERRIAM-WEBSTER UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1989); *Cambridge Toxicology Group, Inc. v. Exnicious,* 495 F.3d 169, 178 (5th Cir.2007) (motion to strike appropriate when counterclaim was duplicative and improperly "cloaked as newly raised claims.")

Motions to strike for redundancy require a showing of prejudice to the movant. *Leas v. General Motors Corp.*, 278 F. Supp. 661, 663 (E.D. Wis. 1968) (defendant not prejudiced by allegedly redundant count in complaint); 2A J. Moore, FEDERAL PRACTICE AND PROCEDURE, § 12.21(2).  Here, the prejudice to Plaintiff is facially apparent; the amended pleading would subject the Plaintiff is a baseless counterclaim seeking more than $500,000.00.

Finally, there is simply no "Amended Answer."  The recently filed pleading is virtually identical in all respects to the "Answer and Affirmative Defenses" filed nearly a year ago.   (Compare Dkt. #73 with Dkt. #4; excluding the belated counterclaims, each "answer" has 23 "defenses" and consumes 13 pages.)  This so-called "amended" pleading is a contrived vehicle to bring a long-abandoned compulsory counterclaim into this case, seemingly for strategic or tactical reasons.

For all these reasons, the "Amended Answer" should be struck as "redundant," "impertinent," and "immaterial."

**A.    The Mandate of Rules 13(e) and 15(a)(2) for Leave of Court to Assert Belated Counterclaims**.

Plaintiffs have not, and do not consent under FRCP 15(a)(2).   Thus, amendment under the general provisions of Rule 15 is permissible "*only*" by "*the court's leave*."   [Emphasis supplied.]   "Leave" is to be "freely" given "when justice so requires."   But, here, notwithstanding the language of the Court's scheduling order, the Insurer blithely ignored the Rules and failed to ask any permission, putting Plaintiffs to the trouble and expense of this Motion.

It cannot be disputed that this Court has never "permitted" the Insurer to assert a counterclaim.   The Docket of the Clerk makes clear that no Rule 13(e) permission has ever been sought. It is axiomatic that amendment, at least under Rule 15, should be "freely" allowed.   However, it is equally clear that prior court approval is required, that some showing must be made by the party seeking the amendment.

In *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 757 F. Supp.2d 520 (M.D. Pa. 2010), *reconsideration granted, vacated* 2011 WL 743468 (February 24, 2011), the defendant's answer to a second amended complaint was found to be an amended pleading, rather than original answer to the new complaint,

and, thus, the defendant was ***required to obtain leave of court before*** filing its answer, where the defendant's answer contained new claims as well as new factual allegations that did not appear in its original answer.

*Kimberly-Clark* should be compared to *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, *aff'd* 205 F.3d 1347. (N.D. Iowa 1997), where the plaintiffs' Amended Complaint was said to provide the defendant with a right to assert its counterclaim without prior leave of court, because the amended complaint expanded the factual allegations and the scope of the claims.

In repeated holdings, defendants, in similar circumstances, ***have been required*** to obtain leave of court. *Valley Disposal Inc. v. Central Vermont Solid Waste Management District,* 113 F.3d 357 (2d Cir.1997), holds that a belated motion to file a counterclaim in a supplemental answer or in an amended answer may properly be denied either where the delay is lengthy or where there is no reasonable explanation for failure to assert it, or to make motion earlier. The Second Circuit explained:

> Rule 13 also provides that a claim not asserted by the defendant in his answer may, ***if the court allows,*** be asserted later in a supplemental answer ***if the claim had not matured or had not been acquired by the time the original answer was served ...*** A belated motion to file ***such a pleading may properly be denied where the delay is lengthy or where there is no reasonable explanation for the failure to assert it, or to make the motion, earlier***.  [Emphasis supplied.] *Id.* at 365-366.

In *City of Jersey City v. Consolidated Rail Corporation,* 968 F.Supp.2d 302 (D.D.C.2013), *aff'd* 2014 WL 1378306, real estate developers intervened in an action seeking a declaration that a railroad branch was conveyed to Conrail as a "line" instead of a "spur" under the Railroad Reorganization Act, so as to require Surface Transportation Board (STB) approval for its abandonment.  The intervenors were ***not*** entitled to leave in order to file an amended answer to add counterclaims and cross-claims; although no discovery had taken place.   The intervenor-developers, in a manner similar to the "civil conspiracy" claim here effectively sought to expand the scope of the case beyond the basic issue in the case and to add state law claims that would require the court to delve into their negotiations unrelated to this basic issue.

Similarly, in *Bernstein v. Village of Wesley Hills,* 95 F.Supp.3d 547 (S.D.N.Y.2015), *aff'd*  644 Fed. Appx. 42 (2d Cir. 2016), a defendant-religious corporation was ***not*** allowed to amend its counterclaims seeking declaratory and injunctive relief in an action challenging the adequacy of an environmental review conducted in connection with development of property owned by the corporation. The amendment sought to add a claim for monetary damages, where discovery was

completed, motions for summary judgment had been filed, and the corporation provided no reason for its delay.

Finally, in *Hall v. Aetna Casualty and Surety Co.*, 617 F.2d 1108 (5th Cir. 1980), leave of court was required for amendment to a defendant-insurer's answer to assert that the accident at issue was not covered because of the operation of a specified exclusion, where the amendment was offered after commencement of trial.

### B. <u>The Predicates of Rules 13 (e) for Belated Compulsory Counterclaims.</u>

The plain language of Rule 13 (e) allows only supplemental counterclaims "that ***matured*** or [were] ***acquired*** by the party ***after*** serving an earlier pleading." [Emphasis supplied.]  The Insurer has attempted to weave a theory that their so-called "counterclaims" "matured" or were "acquired" as a result of recent document production.  That theory is transparently inaccurate.

The operative facts of the attempted "counterclaims"—non-disclosure of mold and water damage at the Hotel—were, in fact, disclosed more than a year before the initial Answer was filed.  In this regard, it should be noted that these facts are geographically, quantitatively, and qualitatively different from the mold conditions upon which Plaintiff's insurance claim is based.  The Insurer was on notice of certain matters which should have forced it file any counterclaims that it possessed.  As this Memorandum makes clear, FM apparently had no such claims,

because it is now unable to plead them properly.  But if it had any such claims, it was on notice of sufficient facts to prevent this late-date assertion of claims that will substantially expand the scope of the litigation.

Nearly a year ago, when its original Answer was filed, AFM had information in its possession, included in thousands of pages of information voluntarily produced by Plaintiffs in response to AFM's requests, that mold and water problems had occurred in the Hotel prior to September, 2015. Presumably based on that information, AFM asserted an affirmative defense to coverage based on fraud. Plaintiffs flatly deny that any such fraud has occurred, but the point is that AFM could have, but chose not to, assert a counterclaim at that time based on the very information which on it relied in asserting its affirmative defenses based on fraud. (Dkt. #4, 12-13).

The alleged fraud occurred long before AFM's original Answer was filed, and hence did not "mature" and was not later "acquired" within the meaning of Rule 13(e).

## C. Leave To Submit Belated Counterclaims Should Not Be Granted.

Plaintiff understands that this Court "must view the pleadings in a light most favorable to the pleading party" and that, as a result, motions to strike are rarely granted.  *See Blevins v. Piatt,* 2015 WL 7878504 *2 (December 4, 2015 D. Md.)

(Hollander, J.); *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) (Carter, J.).   However, a minimal level of respect for the Court's management of this case, not to mention respect for the explicit requirements of the Rules of Civil Procedure, should have required, in a motion for leave, that FM explain how its "counterclaims" would impact the very recent, carefully negotiated discovery schedule.   Instead, defying the plain mandates of FRCP 13(e) and 15(a)(2), the Defendant-Insurer simply filed and remained silent with respect to the counterclaims as the schedule was negotiated.

The federal case law is consistent in holding that (1) when the Plaintiff would be prejudiced; and (2) when established discovery periods will be disrupted, leave for belated counterclaims should not be granted.   *E.g., Lopez v. Reliable Clean-up and Support Services, LLC,* 2018 WL 3609271 at *2--*6 (July 27, 2018 N.D. Texas). *Lopez* is a remarkably similar to the case *sub judice.*   Disruption of a scheduling order and discovery and prejudice to the Plaintiffs would require that leave be denied, even if it had been sought.

But, more basically, ***permission must be sought.***   In order to invoke 13(e), the movant must make some showing, at a hearing, or by verified pleadings.   Failure to seek leave is a fatal error.

## III.   THE DEFENDANT'S BELATED EFFORT TO FILE ITS "COUNTERCLAIMS" FOR FRAUD AND "CIVIL CONSPIRACY" SHOULD BE DISMISSED, WITH

### Prejudice, for Failure to State a Claim upon which Relief Can Be Granted

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) now requires that a complaint or counterclaim allege facts that, if proven, would support the relief requested *and* show that the alleged facts were "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555.

*Twombly's* equally well-known successor, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)*,* held that two cardinal principles provided the basis for *Twombly.* First, while a court must accept as true all well-pleaded factual allegations in the complaint or counterclaim, but it need not accept the truthfulness of legal conclusions. Second, only a complaint that states a "***plausible***" claim for relief can survive a motion to dismiss.

The *Iqbal* Court wrote that *Twombly's* complaint "flatly pleaded" that the defendants had entered into a conspiracy and, as a result, the complaint set forth a "legal conclusion," was "deficient," and was not entitled to the assumption of truth.

In the case now before this Court, there is no "plausible" claim for fraud or civil conspiracy because the fraud "counterclaim" merely recites the elements of fraud as a matter of law. It does not plead fraud with "particularity" as required by

Rule 9(b).  Moreover, there can be no fraud without "injurious reliance;" here there is nothing more than the exercise of due diligence and routine investigatory procedures.  Finally, the allegations could have been formulated when the initial Answer was filed, and, of course, FM failed to obtain the mandated leave of Court.

### A. The "Acquisition" or "Maturation" of the Counterclaim.

*Young v. City of New Orleans*, 751 F.2d 794, 800 (5th Cir. 1985), is illustrative of the proper operation of Rule 13 (e) in the context of belated counterclaims.  In this section 1983 case for excessive force, individual defendants filed counterclaims, under state law, for, *inter alia,* malicious prosecution and abuse of process.  The district court properly dismissed the counterclaims because they had not "matured" at the time of answer, since the state-law abuse of process claims required the prior, unsuccessful termination of the abusive action.  Therefore, the claims were non-compulsory, and federal courts, under then current law, were said to have jurisdiction only over compulsory state-law counterclaims.

In *Harbor Insurance Co. v. Continental Bank Corp.*  922 F.2d 357 (7th Cir. 1990), Judge Posner subsequently disagreed and acknowledged creating a conflict in the Circuits.  In *Harbor Insurance,* insurers under a directors' and officers' policy brought suit against the insured bank, seeking a declaration that the insurers were

not liable for claims asserted in connection with certain securities fraud actions.
After the bank settled the securities cases, it filed a counterclaim against the insurers.

Judge Posner argued that "[e]very consideration of judicial economy that
argues for ancillary jurisdiction over Rule 13(a) counterclaims—and those are the
very considerations responsible for the doctrine of ancillary jurisdiction, which until
a few weeks ago ... was not statutory—argues with equal force for ancillary
jurisdiction over a Rule 13(e) counterclaim, although not over every one since some
Rule 13(e) counterclaims are permissive in the 13(b) sense."

This Circuit conflict appears to remain, **but both the Fifth Circuit's and
Seventh Circuit's holdings require that "mature" counterclaims, arising from the
same occurrence, are compulsory and must be asserted at the time of answer.**
Permission for "late-filed compulsory counterclaim" must be predicated on a
showing that the compulsory counterclaim did not "'exist'" as of the time of filing
the answer to the complaint.  *See generally 1-10 Industry Associates, LLC v. United
States,* 528 F.3d 859, 869-870 (Fed. Cir. 2008).

It is plain that the attempted "counterclaims" are based, at least substantially,
on documents such as the "*Phase 1 Environmental Site Assessment of Hilton Hotel,*
dated May 2, 2005, that were in the possession of Defendant's counsel more than
one year prior to the Insurer's submission of its initial Answer to this Court.  This

document is Bates stamped "Sky" 9067 through 9326, and it is marked as "Exhibit 30." It is attached as Exhibit 1 to *Plaintiffs' Answer and Affirmative and Other Defenses to Defendant's Counterclaims*, being filed contemporaneously herewith. It was produced to the Insurer by the Plaintiff.

This "Phase I" report was the subject of extensive sworn testimony by Jerome Edward Yuan, a representative of Plaintiff Sky Harbor, in examinations under oath which proceeded the filing of this lawsuit. An "Examination Under Oath" was conducted on ***October 25, 2016*** in Atlanta, Georgia by James V. Chin, who slightly less than ***one year*** later submitted the Insurer's initial Answer, which ***did not*** contain a counterclaim. The examination of Exhibit 30, including extensive examination of mold and water issues, cover pages 67-115 of the Examination transcript.

The following examples, and many similar disclosures, make clear that the Insurer's counsel was on notice of facts sufficient to formulate the putative fraud counterclaim, if one, in fact, existed:

Page 70:11-12-"***mold*** found in the first floor conference room."·

Page 78:9-11-"historical ***fungal growth*** problems associated with ***construction defects slash water intrusion issues*** at the site building.""

Page 78:18-24-"I think I read the pertinent details of where they **found the mold** and asked about the Peach Tree Corner meeting room to see what the situation was ... ."

Page 79: 6-10-"specifically notates the Peach Tree Corner meeting room, **30 square feet of fungal mold growth**, and then observed along the walls associated with the eastern end of the Peach Tree Corner meeting·room."

Page 80:2-4-"historical **water intrusion** and subsequently **fungal growth problems** in various areas within the site building ... "

Page 85: 4-6-"it was a big concern and **showed the mold growth** in the Peach Tree Corner room."·

Page 88:5-8-"**wide spread leakage** causes contributes to primarily defective original through ·walls, flashings at shelf angles and building expansion ·joint between guest tower and low rise wing."·

Page 88:17-21-"discusses **wide spread leakage** and past repair attempted to address leakage.· Also discussed **mold and mildew found behind the vinyl wall covering of guest rooms.**· Discusses various cracked areas in the brick veneer."·

Page 95:16-24-"***And, you know, they took out if vinyl wallpaper and they found mold. And of the contractors walked out of the job.***
***Q. That's Algiere?***
 ***A. Algiere, yes.***
***Q. Why did they walk out of the job?***

*A. They said that the -- I think the issue was it was a serious mold problem, and they did not think it was suitable for working conditions."*

**B. <u>The Requirement of FRCP 9(b)</u>.**

The Defendant has failed to comply with the requirements of FRCP 9(b) in that they have failed to plead the elements of the claimed fraud with particularity, having failed to plead essential elements of fraud under the laws of Georgia.  The Insurer has pled many facts but has failed to plead "fraud" in the procurement of the relevant policy or in the submission of the pertinent claims made by the Plaintiffs, which the Insurer has refused to pay.

FRCP 9(b) mandates that "[i]n alleging fraud ..., a party ***must state with particularity the circumstances constituting fraud*** .... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Note that, as in the *Twombly-Iqbal* context, conclusory statements of fraud, even if extensive, are not enough.  *E.g., Tortilla Factory, LLC v. Better Booch, LLC*, 2018 WL 4378700 at *7. (slip opinion) (September 13, 2018 C.D. Cal.)(Snyder, J.).

Judge Snyder also cited, in this regard to the well-known conclusion of Professors Wright and Miller:  "Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b), unless accompanied by a statement of the facts upon which the pleader's belief is

founded." 5A C. Wright & A. Miller, *Pleading Fraud With Particularity—Extent of Requirement*, FEDERAL PRACTICE AND PROCEDURE, § 1298 (3d ed. 2004).  There is, of course, no verification of the claims of fraud by the Insurer.

**D.**     **The Requirement of "Injurious Reliance**."

Perhaps more critically, the Insurer has failed, utterly, to plead the necessary element of injurious reliance.  Stated simply, this Insurer seeks to convert its routine investigation and due diligence into "damages" for fraud.  Judge Story of this Court recently observed: "Under Georgia ... law, a fraud claim[] requires five ***essential elements***: a false representation, scienter, inducement, ***reliance, and injury resulting from reliance on the false representation***. O.C.G.A. § 9–11–9(b); *Cox v. Bank of America., N.A.*, 321 Ga. App. 806, (2013) ..." *Kuchenmeister v. HealthPort Technologies, LLC,* 309 F. Supp. 3d 1342, 1348 (N.D. Ga. 2018) [Emphasis supplied; citations in original.].

In the present case, the Insurer has recast, improperly, as damages arising from fraud, the overhead costs of its routine claims investigation.  Faced with a claim potentially in excess of $20 million, it is not unusual that the Insurer has engaged in investigatory activities resulting in internal administrative costs of more than $500,000.00.

**E.** **The Non-Existence of the Tort of "Civil Conspiracy."**

Finally, the Insurer's "civil conspiracy" counterclaim should be dismissed because it seeks to make a claim that is not recognized in Georgia.  Relief cannot be granted on the claim because it does not exist.  There is no substantive tort in Georgia for civil conspiracy, and there never has been.  "Civil conspiracy" may be asserted in a timely pleading in order to expand the potential defendants.  To the extent that it is, indeed, the Insurer's intent, to use the civil conspiracy claim, in order to disqualify Plaintiffs' counsel, such a tactical, tardy effort should be denied.

"Accurately speaking, *there is no such thing as a civil action for conspiracy*. There is an action for damages caused by acts pursuant to a formed conspiracy, but ***none*** for the conspiracy alone." *First Federal Savings Bank v. Hart,* 185 Ga. App. 304, 305 (1987). [Citation, punctuation, and emphasis omitted.]; *Nicholson v. Windham,* 257 Ga. App. 429, 433 (2002). [Emphasis supplied.]  "The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done." *Id.*

*ALTA Anesthesia Associates of Georgia, P.C. v. Gibbons*, 245 Ga. App. 79 (2000), succinctly summarized this well-developed law *Cook v. Robinson*, 216 Ga. 328, 329 (1960): "***[T]he conspiracy of itself furnishes no cause of action***.  The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage."   "Proof of a conspiracy

merely allows the plaintiff to expand the reach of her action … ." *ALTA Associates*, *supra* at 85-86.  [Emphasis supplied.]

In *Savannah College of Art & Design, Inc. v. School of Visual Arts of Savannah, Inc.,* 219 Ga. App. 296 (1995), even the plaintiff recognized that it could not recover separately "for any tort of conspiracy" and advanced conspiracy only as a means "to impute liability to all defendants for the acts performed by only one or some." See *Groover v. Brandon*, 200 Ga. 153, 164 (1945). "The gravamen of any civil conspiracy claim is not the alleged collusion, but tortious conduct committed against the plaintiff which proximately causes an injury. [Cit.]" *Ray v. Atkins*, 205 Ga. App. 85, 90 (1992).

Judge Beasley in her opinion in *SCAD*, emphatically declared, quoting from *Cook, supra* at 328-329: "***The law is that*** "'… ***[w]here it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action.*** The gist of the action, if a cause of action exists, ***is not the conspiracy alleged***, but the tort committed against the plaintiff and the resulting damage. [Cit.] . . . [W]here the act of conspiring is itself legal, the means or method of its accomplishment must be illegal." [Emphasis supplied; citations deleted.]

Finally, Exhibit 28 referenced by the Insurer in the counterclaim [Dkt. # 73, p. 27] should be examined, specifically the email from Plaintiff's counsel to one of

his co-counsel.  No objection is made to this otherwise privileged communication, because it demonstrates the frivolity of the claim.  A business discussion between co-counsel, dealing with the terms of a joint representation is hardly a "civil conspiracy."[4]

## F.    AFM's Claim For Attorneys' Fees Under O.C.G.A. § 13-6-11 Should Be Dismissed.

AFM cannot recover litigation expenses under O.C.G.A. § 13-6-11 because AFM's purported Counterclaims arise out of the same set of facts and occurrences on which Plaintiff's claims are based. See *Byers v. McGuire Properties, Inc.*, 285 Ga. 530, 539 (2009); *Graybill v. Attaway Construction & Associates*, LLC, 341 Ga. App. 805, 810–11.

## IV. CONCLUSION.

The Insurer's so-called "Amended Answer and Counterclaim" should be struck and the putative counterclaims dismissed with prejudice.  "Because the failure to plead a compulsory counterclaim can result in loss of that counterclaim forever,

---

[4] The remaining Exhibits on which AFM relies in support of its "civil conspiracy" counterclaim are subject to a claim of privilege given in writing to counsel for AFM on September 13, 2018. Per FRCP 26(b)(5)(B), having been notified of this claim of privilege, AFM's counsel "must not use… the information until the claim is resolved."

the courts generally should be forgiving when leave is sought to add compulsory counterclaims, at least so long as the plaintiff makes no showing of prejudice...." *Boyd v. JohnGalt Holdings, LLC,* 294 Ga. 640, 641 (2014) (construing the identical provisions of the Georgia Civil Practice Act). [Citation and punctuation omitted.] [5] "The failure to plead a compulsory counterclaim can result in the party losing the right to assert that claim in a subsequent action." *Kitchens v. Lowe*, 139 Ga. App. 526, 527 (1976) (Quillian, J.)   In the present case, such forgiveness is not appropriate.

The Defendant's attempted pleading required the prior approval of the Court under FRCP 13 (e) and FRCP 15(a)(2).  The Insurer sought neither.  The "Amended Answer" is, in fact, a sham.  Nothing about the Answer is being amended.  It is a Potemkin Village--a stage set--advanced as a vehicle for the assertion of an out-of-time compulsory counterclaim.

The fraud claim fails to allege, as long required, the *sine qua non* of injurious or detrimental reliance.  The alleged fraud has not been alleged with the necessary

---

[5] *Synovus Bank v. Peachtree Factory Center, Inc.,* 331 Ga. App. 628 (2015)..("Because Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of the federal courts interpreting the federal rules are persuasive authority.")

particularity.  The civil conspiracy counterclaim fails to state a claim, because it alleges a non-existent tort.

This 28th day of September, 2018.

Respectfully submitted,

/s/ *Keith S. Hasson*
Keith S. Hasson
Georgia Bar No. 336383
Michael F. O'Neill
Georgia Bar No. 553740

**HASSON LAW GROUP, LLP**
3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: 678-701-2869

**Of Counsel:**
Raymond Steinbrecher, Jr.
P.O. Box 27280
Panama City, Florida 32411
850-319-6773

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO.: 17-cv-03910-AT |
| AFFILIATED FM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2018, a copy of the within and foregoing *Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion to Strike, Pursuant to FRCP 12(f), or to Dismiss, Pursuant to FRCP 12(b)(6), Defendant's "Amended Answer and Counterclaim"* was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

*James V. Chin, Esq.*
*Justan C. Bounds, Esq.*
*Amanda D. Proctor, Esq.*
*CARLTON FIELDS JORDEN BURT, P.A.*
*1201 West Peachtree Street*

*Suite 3000*
*Atlanta, Georgia 30309*

This 28th day of September, 2018.


/s/ *Keith S. Hasson*
Keith S. Hasson
Georgia Bar No. 336383

**HASSON LAW GROUP, LLP**
3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: (678) 701-2869

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | CIVIL ACTON FILE |
| v. | ) | NO.: 17-cv-03910-AT |
| | ) | |
| AFFILIATED FM INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **LOCAL RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 point.  The Brief has also been prepared in compliance with the margin specifications and page limitation provisions of such Rules.

This 28th day of September, 2018.

/s/ Keith S. Hasson

Keith S. Hasson
Georgia Bar No. 336383

**HASSON LAW GROUP, LLP**
3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: 678-701-2869