**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:17-CV-03910-AT |
| v. | ) ) | |
| AFFILIATED FM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

**AFFILIATED FM INSURANCE COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE,
OR ALTERNATIVE, MOTION TO DISMISS**

Plaintiffs' Motion to Strike, or Alternative, Motion to Dismiss [D.E. 76] Affiliated FM Insurance Company's ("AFM") Amended Answer and Counterclaims should be denied for two simple reasons. First, the Amended Answer and Counterclaims were timely filed before the deadline set forth in the Court's Amended Scheduling Order [D.E. 70]. Second, even a cursory review of the facts alleged in AFM's Counterclaims, and the more than 25 exhibits attached

thereto,[1] demonstrates that AFM has alleged viable claims for fraud, conspiracy to commit fraud, and attorney's fees under Georgia law.

## BACKGROUND

Over one year ago, Plaintiffs filed the instant suit for breach of contract, reformation, and bad faith, claiming that certain property damage and business losses at a hotel located at 599 Peachtree Industrial Boulevard, Norcross, Georgia 30092 (the "Hotel") were covered under an insurance policy issued by AFM to Plaintiff Crestline Hotels & Resorts, LLC. Since filing this lawsuit, Plaintiffs have failed to prosecute their claims and have not met any discovery deadlines.  For example, on November 22, 2017, shortly after filing its initial Answer, AFM served Plaintiffs with discovery requests, seeking communications and other documents relevant to Plaintiffs' claims.  Plaintiffs failed to respond in a timely manner and even after the Court appointed a Special Master in March 2018 to monitor the discovery in this case, Plaintiffs still have not complied with their discovery deadlines.  Moreover, on May 1, 2018, two of the three law firms representing Plaintiffs announced their intent to withdraw from the case, essentially resulting in a stay of the case for over two months.

---

[1] While AFM disputes Plaintiffs' efforts to claw back Exhibits 25, 26, 27 attached to the Counterclaims based on claims of privilege, those exhibits are not necessary to the Court's determination of the instant Motion.

Prior to Plaintiffs' counsel withdrawing from this case, AFM had served approximately fifty third party subpoenas and collected over 200,000 documents. From these third party documents, it became clear that Plaintiffs committed fraud in the reporting and investigation of their mold and water damage claim. Indeed, Plaintiffs' prior counsel withdrew from the case because of the information contained in some of these third party documents.

On June 11, 2018, over a month after Plaintiffs' prior counsel announced their intent to withdraw, AFM notified Plaintiffs of its intent to amend its answer to assert a counterclaim for fraud if Plaintiffs did not dismiss their lawsuit with prejudice.   (A true and accurate copy of the June 11, 2018, email to Ray Steinbrecher and Matthew Conroy is attached hereto as **Exhibit A**.)[2] Plaintiffs chose not to dismiss their claims, and after Plaintiffs engaged additional counsel, the parties resumed meeting with the Special Master to set new deadlines for discovery.   Thereafter, pursuant to the Special Master's recommendation and the Court's directive, the parties negotiated and presented an amended scheduling order to the Court to restart the case.  Plaintiffs agreed to a scheduling order which

---

[2] AFM is attaching exhibits to this brief to respond to Plaintiffs' Motion to Strike and Plaintiffs' arguments that AFM has been dilatory in filing its counterclaim and that Plaintiffs have been prejudiced.   The exhibits are not necessary to respond to Plaintiffs' Motion to Dismiss.

included leave to amend pleadings through October 1, 2018.  The Court signed the agreed Amended Scheduling Order as presented by the parties. (D.E. 70, p. 2.)

On September 7, 2018, AFM filed its Amended Answer and Counterclaim. The facts alleged therein, which must be accepted as true for purposes of Plaintiffs' Motion, demonstrate that Plaintiffs withheld information and falsely represented when they discovered the mold and water damage at the Hotel both during AFM's investigation of the claim and in their filings and sworn discovery responses in this suit.  The exhibits attached to the Counterclaims—all of which were acquired for the first time by AFM during discovery of this action—show that Plaintiffs falsely represented their knowledge of the poor conditions at the Hotel.  Had Plaintiffs told the truth about the mold and water problems at the Hotel, then AFM would not have been forced to undertake such a lengthy and expensive claim investigation. Plaintiffs' misconduct gives rise to claims for fraud, conspiracy, and attorney's fees for which AFM is entitled to relief.

## ARGUMENT AND CITATION TO AUTHORITY

As explained below, Plaintiffs' Motion should be denied because the Amended Answer and Counterclaims were timely filed per the Court's Amended Scheduling Order and each counterclaim therein states a claim for relief.

## I.   AFM's Amended Answer and Counterclaims; was timely filed.

The Amended Scheduling Order granted the Parties "leave to amend pleadings" through October 1, 2018.  AFM timely filed its Amended Answer and Counterclaims three weeks earlier on September 7, 2018.  Accordingly, AFM filed its Amended Answer and Counterclaims within the time frame permitted by the Court–which was agreed to and jointly filed by the Parties–and no further procedural analysis is necessary.

Federal Rule of Civil Procedure 15 governs the filing of amended pleadings and establishes two avenues for amendment:  filing as a matter of right (Rule 15(a)(1)) and filing with either the consent of the other parties or leave of Court (Rule 15(a)(2)).  The Amended Scheduling Order provided "leave to amend pleadings" through October 1, 2018.  Consequently, AFM filed its Amended Answer and Counterclaims with leave of Court and properly under Rule 15(a)(2).

Moreover, Plaintiffs agreed to the deadlines set in the Amended Scheduling Order.  The Parties worked together and jointly drafted the deadlines in the Amended Scheduling Order before submitting them as a Joint Motion to Amend Scheduling Order.  Initially, AFM proposed a September 14, 2018, deadline for leave to file any amended pleadings, but Plaintiffs specifically requested that the deadline for leave to amend be pushed back to October 1, 2018.  Plaintiffs

requested the additional two weeks because the parties had agreed to complete their rolling document productions by September 14, 2018 and Plaintiffs wanted time to consider whether to amend their pleadings in light of any of the documents that were going to be exchanged.  AFM agreed to the October 1, 2018, deadline for leave to amend pleadings and memorialized this understanding in an email to the Special Master on August 9, 2018.  (A true and accurate copy of the August 9, 2018 Email is attached as **Exhibit B**.)   The amendment language was then submitted to the Court by all Parties through the Joint Motion to Amend Scheduling Order.  (D.E. 69.)

Moreover, when Plaintiffs requested the October 1, 2018, deadline for leave to amend pleadings, they did so with full knowledge of AFM's intent to file a counterclaim for fraud.  On June 11, 2018, AFM notified Plaintiffs of AFM's intent to file the counterclaim.   Counsel for AFM sent an e-mail to Ray Steinbrecher (still counsel of record for Plaintiffs) and Matt Conroy (former counsel for Plaintiffs).   (*See* **Ex. A**.)   Arguably, the joint submission of the proposed scheduling order constitutes the Plaintiffs' "written consent" to AFM's Amended Answer and Counterclaims.   Regardless, the Amended Scheduling Order provides "leave to amend pleadings," and Plaintiffs' arguments fail to recognize this simple fact.

## II.   Accepting AFM's allegations as true, AFM has adequately pled counterclaims for fraud, conspiracy, and attorney's fees.

In Plaintiffs' motion to dismiss under Rule 12(b)(6),[3] Plaintiffs have failed to address the detailed factual allegations of the Counterclaims.  Instead, Plaintiffs rely upon broad references to general pleading standards. As shown below, each counterclaim asserted by AFM is recognized under Georgia law.   Accordingly, Plaintiffs' Motion to Dismiss should be denied.

### A.   Fraud.

To establish a claim for fraud under Georgia law, a party must prove five elements: (1) a false representation; (2) scienter; (3) intention to induce the party to act or refrain from acting; (4) justifiable reliance on the misrepresentation; and (5) damages. *Engelman v. Kessler*, 340 Ga. App. 239, 246 (2017).   Federal Rule of Civil Procedure 9(b) requires that fraud be pled "with particularity."   Under this standard, "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were

---

[3] As an initial matter, Plaintiffs' 12(b)(6) motion is procedurally improper and moot because Plaintiffs contemporaneously filed an answer to AFM's Counterclaims.   *See Veltre v. Sliders Seaside Grille, Inc.*, 2016 WL 524658, at *1 (M.D. Fla. Feb. 10, 2016) ("Where, as here, an Answer was filed prior to the resolution of the motion to dismiss, the motion becomes moot.").   As explained below, even if the motion is not mooted, the motion fails on the merits.

made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

AFM's Counterclaims are replete with allegations that Plaintiffs falsely represented that they discovered the water and mold damage in September 2015 in their First Report of Loss, their Proofs of Loss dated February 11, 2016, and March 11, 2016, and throughout the claim investigation. (Doc. 73, Counterclaims, ¶¶ 16-17, 19, Exs. 1-3) (hereinafter "Counterclaims"). Crestline and Sky Harbor have perpetuated these false representations in this action by alleging in the Complaint and in responding to discovery under oath that they first discovered the damage to the Hotel in September 2015.  (*Id.* ¶ 20).

Moreover, the Counterclaims allege that, despite these representations, Plaintiffs had knowledge of the water and mold damage at the Hotel well before September 2015.  Indeed, Plaintiffs discovered the water and mold damage at the Hotel both before Plaintiffs purchased the Hotel in November of 2013 and before the inception of the two policies at issue here.  (*Id.* ¶¶ 1, 7, 27-28.)  By way of example and without limitation, Paragraph 27 of the Counterclaims details the following evidence demonstrating Plaintiffs' knowledge of the water and mold damage at the Hotel pre-September 2015:

- On October 17, 2013, which was nearly two years earlier, and before Sky Harbor even purchased the Hotel, during the pre-purchase due diligence phase, Crestline found evidence of mold in guestrooms. Chris Flagg, a representative at Crestline, emailed Frank Yuan, a principal at Sky Harbor, notifying Yuan that Crestline "found evidence of mold in some guestrooms" that "could be due to moisture seepage through the exterior brick façade." Mr. Flagg also sent the October 17, 2013, email identifying the mold damage to Pierre Donahue—Crestline's General Counsel and the person that signed Crestline's Proof of Loss.

- More than a year before the alleged discovery, on July 29, 2014, Sky Harbor's general contractor, Robert Algiere of Algiere Construction, emailed Sky Harbor explaining why his company could not lower its bid to renovate the Hotel because the Hotel had "problems like leaks, mold, etc."

- On August 1, 2014, representatives at Sky Harbor and Crestline met to discuss the leaks and mold at the Hotel. As part of that meeting, Crestline shared an agenda that listed "Significant concerns about existing conditions at the property" as an agenda item and explained that the "solution will require significant repairs to the window seals and dry rot under bathtubs."

- On August 1, 2014, in advance of the meeting to discuss the leaks and mold at the Hotel, Crestline also sent a PowerPoint to the meeting participants, including Frank and Jerome Yuan of Sky Harbor that was titled "Existing Guestroom Conditions." The 2014 Crestline PowerPoint included several guest reviews and pictures highlighting the mold problems in the guestrooms.

- Mr. Pouderoyen completed a report on or about August 25, 2014 to Sky Harbor noting that "ALL windows will need new seals or caulking treatment to stem water infiltration."

- In 2014, Mr. Pouderoyen and Ms. Remington sought a bid from Finite Reimaging, a construction company, to repair the water infiltration issues at the Hotel. On October 13, 2014, Finite Reimaging prepared a bid of

approximately $300,000 to address "exterior water infiltration . . . at the Hilton Northeast property."

- Representatives of Sky Harbor attended a Shareholders' Meeting on November 3, 2014, that included a PowerPoint budgeting $500,000 to repair the leaky exterior façade of the Hotel.

- In February 2015, Finite Reimaging performed work on two sample rooms at the Hotel, room 600 (6th floor) and 1017 (10th floor). Finite Reimaging reported "high mold presence" in both rooms.

- On March 3, 2015, Finite Reimaging submitted its "Water Intrusion Report." The report stated that "there are multiple contributing factors to the water intrusion which are as follows; failure of construction sealants, failure of window glazing gaskets and the lack of a water repellant sealer at the masonry substrates." The report noted that "the building is taking on significant water during a Wind Driven Rain event" and that "multiple areas of the building have visible efflorescence and mildew." The report also stated that "the building is allowing moisture to continually intrude at varying levels all throughout the property," and that conditions in the Hotel created "a breeding ground for mold." The report was shared with multiple representatives of Sky Harbor and the general contractor, Algiere Construction.

(Counterclaims, ¶ 27.)

Accepting all these facts as true, as the Court must at this stage, AFM has more than adequately alleged that Plaintiffs had knowledge of historical water and mold issues at the Hotel prior to their "discovery" of the same on September 2015. Similarly, AFM sufficiently alleges general allegations of intent to defraud. Under Rule 9(b)'s pleading standard, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  AFM has met

this standard by alleging that Plaintiffs misrepresented their discovery of the loss and did so with the "inten[t] to and did deceive AFM with these misrepresentations and omissions" in the investigation of the claim. (Counterclaims, ¶ 46.) Allegations of a general "intent to deceive and mislead" the defrauded party to act on the misrepresentation is sufficient to withstand a motion to dismiss. *See J'CARPC, LLC v. Wilkins*, No. 1:06-CV-2357WSD, 2007 WL 1541955, at *4 (N.D. Ga. May 22, 2007) (denying motion to dismiss because plaintiffs alleged that defendant made promises with intent to deceive and mislead plaintiff).

Additionally, AFM has adequately pled detrimental reliance.  AFM incurred over $500,000 in pre-litigation expenses to investigate Plaintiffs' fraudulent insurance claim.   Plaintiffs do not cite any support for their self-serving statement that the expense of AFM's investigation does not qualify as damages for purposes of a fraud claim.

Case authority addressing the issue of whether the cost of an insurer's investigation into a fraudulent insurance claim constitutes detrimental reliance directly contradicts Plaintiffs' assertion.   Numerous courts have held that an insurer can show detrimental reliance by demonstrating that it undertook (and incurred costs during) the investigation and adjustment of a fraudulent claim. *See, e.g.*, *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1486 n.16

(6th Cir. 1991); *Acuity v. Auto Tech Auto. Inc.*, No. 2:09 CV 336, 2012 WL 124928, at *9 (N.D. Ind. Jan. 17, 2012); *Felman Prod., Inc. v. Indus. Risk Insurers*, No. CIV.A. 3:09-0481, 2011 WL 4546811, at *2 (S.D. W. Va. Sept. 29, 2011); *American Family Mut. Ins. Co. v. Schley,* 978 F. Supp. 870, 876 (E.D. Wis. 1997). The rationale for this approach is that "an insurer relies on proof of loss submissions when it investigates the claim" and "it would be unreasonable to require an insurer to 'incur the 'injury' of paying what it believes to be a fraudulent claim before it can properly claim fraud.'" *Felman Prod., Inc.*, 2011 WL 4546811, at *2 (quoting *J.C. Wyckoff*, 936 F.2d at 1486 n.16.). Thus, "investigatory steps taken by an insurer, influenced by false information provided by the insured, are sufficient to constitute reliance." *Acuity*, 2012 WL 124928, at *9.

In *Felman*, for example, the insured misrepresented facts in its proof of loss and concealed facts about its business during the insurer's investigation of a loss resulting from the failure of a furnace at the insured's plant.  The insurance company undertook a costly investigation of the policyholder's fraudulent claim but neither accepted nor denied the claim, which resulted in a lawsuit.  *Felman*, 2011 WL 4546811, at *2.

The court rejected the policyholder's argument that because the insurance company failed to pay the claim, the insurer could not show justifiable reliance.

*Id.*  Instead, the court reasoned that the insurance company relied on the proofs of loss and supporting material in its investigation of the claim and, as such, could proceed with a counterclaim for fraud.  *Id.*

Here, AFM retained four outside consultants to aid in the investigation and adjustment of the Plaintiffs' reported loss.  AFM spent over $500,000 to investigate Plaintiffs' claims.  Plaintiffs' attempt to classify these expenses as "overhead" is disingenuous at best.  AFM would not have incurred these costs but for the fraudulent notice of claim submitted by Plaintiffs.  Simply put, had Plaintiffs told the truth from the beginning, AFM would not have incurred these costs.  As in *Felman*, Plaintiffs made material misrepresentations throughout the claim investigation and in their proofs of loss regarding the nature and scope of the damages claimed. Plaintiffs also withheld critical information.  AFM relied on Plaintiffs' representations and omissions.  Accordingly, based on the court's rationale in *Felman*, AFM has adequately pled justifiable reliance to support its counterclaim for fraud.  Plaintiffs' motion to dismiss should be denied.

## B.   Georgia law recognizes a claim for civil conspiracy as derivative of a claim for fraud.

In its Counterclaims, AFM alleges that Crestline and Sky Harbor conspired to perpetrate the fraud both in the claim investigation and in the filing of the action

in this Court.  Under Georgia law, each conspirator would be liable for the acts of the other. Accordingly, AFM's civil conspiracy states a claim for relief.

"To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." *McIntee v. Deramus*, 313 Ga. App. 653, 656 (2012) (internal quotation marks omitted). Under Georgia law, "the conspiracy of itself furnishes no cause of action." *Id.* Nevertheless, pleading conspiracy "if proved, makes any actionable deed by one of the conspirators chargeable to all." *Cook v. Robinson*, 216 Ga. 328, 329 (1960).

### C.   AFM's has properly pled a claim under O.C.G.A. § 13-6-11 for attorney's fees because its fraud and conspiracy counterclaims accrued after Plaintiffs' claims.

O.C.G.A. § 13-6-11 allows a plaintiff to recover the expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Plaintiffs do not refute, nor could they, that an intentional tort such as the fraud alleged by AFM can serve as the basis for a recovery under Section 13-6-11. *See Kopp v. First Bank of Georgia*, 235 Ga. App. 520, 523 (1998) ("Every intentional tort, such as fraud, invokes the species of bad faith that under the provisions of [O.C.G.A. § 13–6–11] entitles the person wronged to recover the expense of litigation involving attorney's fees.").

Under Georgia law, a plaintiff-in-counterclaim may seek 13-6-11 fees "if the counterclaim is an independent claim that either arose separately from the plaintiff's claim or arose *after* plaintiff's claim."  *Sanders v. Brown*, 257 Ga. App. 566, 570 (2002)(emphasis added).  Well established Georgia law recognizes that a cause of action for fraud accrues at the time the fraud is discovered. *Life & Cas. Ins. Co. of Nashville, Tenn., v. Walker*, 62 Ga. App. 819 (1940).

AFM's fraud and conspiracy claims did not accrue until after Plaintiffs filed this suit.  The systemic fraud committed by Plaintiffs in the submission of their claim and in the filing of the instant suit was not complete or apparent until AFM obtained discovery from third parties in the instant action. Because AFM's claims for fraud and conspiracy did not accrue until after the filing of Plaintiffs' action, AFM has stated a viable claim for fees under O.C.G.A. § 13-6-11.

## III.   Plaintiffs' remaining arguments regarding timeliness, prejudice, and general impropriety of including counterclaims in an amended answer are irrelevant and without support.

Plaintiffs have spent a considerable number of pages arguing about timeliness and prejudice.  All of these arguments are irrelevant because, as noted above, the Court's Amended Scheduling Order provided for leave to amend pleadings until October 1, 2018.  The Plaintiffs agreed to this deadline.

That said, Plaintiffs' arguments fail to acknowledge that AFM's Counterclaims are based on evidence produced by third parties during discovery. Plaintiffs have made conclusory allegations of prejudice but have not provided any specific examples of how they will be prejudiced beyond facing exposure for over $500,000 in damages. Finally, the Counterclaims were properly asserted in an Amended Answer as required by Federal Rule of Civil Procedure 13.

### A.    AFM did not delay in filing the Amended Answer and Counterclaims.

Simply put, AFM's Amended Answer and Counterclaim were timely filed. Apart from the fact that the amendment was filed prior to the deadline set forth in the Court's Amended Scheduling Order, the evidence demonstrating the basis for the fraud counterclaim was produced during discovery in this action. AFM has actively pursued discovery since the case began—serving fifty subpoenas, open record requests to three governmental agencies, and discovery requests to Plaintiffs. In response to fifty subpoenas served to date, AFM has received over 200,000 documents from third parties. The costly and time-consuming review of those documents has slowly revealed the facts supporting the counterclaims.

Specifically, the third party responses received by AFM revealed that the Hotel was in poor condition and had significant problems with water leaks and mold throughout the building's history that pre-date the alleged date of loss as

16

represented by Plaintiffs.  Indeed, Plaintiffs' former counsel provided one of the most damning documents—a March 15, 2015 "Exterior Façade – Water Intrusion" report from Finite Reimaging  documenting the conditions of the Hotel as creating "a breeding ground for mold"—to AFM a few minutes after he notified AFM and the Special Master of his firm's intent to withdraw from this case.  (A true and accurate copy of the May 1, 2018 Email from Matthew Conroy to James Chin is attached as **Exhibit C**.)

Plaintiffs' argument that AFM should have known about Plaintiffs' fraud before Plaintiffs filed their Complaint is self-serving and unsupported, but for purposes of this response, it also is improper.  It is improper because Plaintiffs insertion of extraneous information (quotes from transcripts and reports that are not part of the pleadings) fall outside the scope of a proper Rule 12(f) analysis.  "The scope of a Rule 12(f) motion should be limited to 'cleaning up' the pleadings, not to challenging claims on their merits."  7703 *Palomar Street, LLC v. Boca Ven Land of Ft. Pierce, Inc.*, No. 08-14182-CIV-Martinez/Lynch, 2018 WL 11331915, at *1 (S.D. Fla. July 24, 2008).  That is, "Rule 12(f) is not . . . an appropriate avenue to challenge the truth of an allegation."  *Novva Ausrustung Group, Inc. v. Kajioka*, No.2:17-cv-01293-RFB-VCF, at *2 (D. Nev. July 13, 2017) (quotation marks omitted).  AFM discovered Plaintiffs' fraudulent scheme during the course

of this litigation and promptly sought to amend its Answer to add the counterclaims at issue.

Nor can Plaintiffs complain of surprise. Plaintiffs own counsel withdrew when reviewing some of the documents that serve as the basis for AFM's fraud claim. When Plaintiffs were considering new counsel to assist attorney Ray Steinbrecher in continuing their lawsuit, AFM sent an email to Plaintiffs advising Plaintiffs that AFM would seek to amend its Answer and add a counterclaim for fraud if Plaintiffs did not dismiss the action. (*See* **Ex. A**). Plaintiffs chose to move forward anyway.

### B. Plaintiffs cannot show prejudice resulting from the filing of the Amended Answer and Counterclaims.

Furthermore, Plaintiffs will not be prejudiced by the amendment. Discovery is ongoing and only two depositions have been taken thus far.[4] More importantly, the Amended Scheduling Order effectively reset this litigation, and the current deadline for fact discovery is April 8, 2019. Further, Plaintiffs do not specify how the scope of discovery will be altered or what other procedural hardship will result from AFM's counterclaims, other than the hardship of having to defend themselves. But the specter of defending against a counterclaim—without more— cannot constitute prejudice, otherwise the mere filing of an Amended Answer with

---

[4] Both depositions were taken by AFM. Plaintiffs have not taken any depositions.

a counterclaim would be sufficient to demonstrate prejudice and reject the filing. Accordingly, the parties should have sufficient opportunity to explore the subject areas of these proposed counterclaims. *See  Emess Capital, LLC v. Rothstein*, No. 10-60882-CIV, 2012 WL 13001838, at *7 (S.D. Fla. May 2, 2012) (quoting *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391–92 (5th Cir. 1981) (finding no prejudice because "[d]iscovery had not been completed at the time of the filing of leave to amend")).

### C.    AFM properly amended its Answer to include the counterclaims at issue.

Finally, Plaintiffs argue that AFM's Amended Answer should be struck under Federal Rule of Civil Procedure 12(f) as it is (according to Plaintiffs) "redundant, immaterial, and impertinent."  Rule 12(f) "allows the Court to strike [f]rom a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-CIV, 2014 WL 12685933, at *1 (S.D. Fla. Mar. 3, 2014).  Here, however, Plaintiffs provide no factual or legal support for their assertions of impertinence, immateriality, and redundancy, apart from simply defining those terms.

Further, it appears that Plaintiffs believe an Answer is a separate pleading from a Counterclaim.  Plaintiffs argue that the Amended Answer "is a contrived vehicle to bring a long-abandoned compulsory counterclaim." (D.E . 76-1 at 6.)  A

counterclaim, however, is not a separate pleading from an answer.  *See* Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.").

"[A] counterclaim is not a pleading and it must be asserted as part of an answer." *PNC Bank, Nat. Ass'n v. LucMaur, LLC*, No. 6:14-CV-248-ORL, 2014 WL 5780386, at *9 (M.D. Fla. Nov. 5, 2014).  Indeed, counterclaims that are filed separately should be stricken from the record because they can only be filed as part of an answer.  *Panama City Beach Condos, Ltd. P'ship v. Adjusters Int'l Colorado, Inc.*, No. 4:08CV369-RH/WCS, 2008 WL 11340312, at *1 (N.D. Fla. Oct. 14, 2008).  Consequently, Plaintiffs' argument that an AFM's amended answer was a "vehicle" for asserting a counterclaim is nonsensical.  AFM's Amended Answer and Counterclaim has been properly pled.

## CONCLUSION

Based on the foregoing, AFM respectfully submits that Plaintiffs' Motion to Strike, or alternative, Motion to Dismiss should be denied.  AFM's detailed Amended Answer and Counterclaims was timely filed in accordance with the Court's Amended Scheduling Order.  Moreover, the allegations of fraud and

conspiracy to commit fraud, as well as the request for attorney's fees based on that conduct, more than suffice to allege claims for relief under Georgia.  Accordingly, Plaintiffs' Motion should be denied.

This 12th day of October, 2018.

*/s/ James V. Chin*
James V. Chin
Georgia Bar No. 124827
Justan C. Bounds
Georgia Bar No.: 339789
Amanda D. Proctor
Georgia Bar No.: 776848

CARLTON FIELDS JORDEN BURT, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, GA 30309
Telephone: (404) 815-3400
Fax: (404) 815-3415
Email: jchin@carltonfields.com
          jbounds@carltonfields.com
          aproctor@carltonfields.com


*Attorneys for Defendant*
*Affiliated FM Insurance Company*

## **LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt.

This 12th day of October, 2018.

/s/ James V. Chin_____

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 12, 2018, I served a true and correct copy of the foregoing document this day using the Court's CM/ECF system, which will automatically send e-mail notification to all attorneys of record.


*/s/ James V. Chin*