UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC,<br>    Plaintiffs,<br><br>*vs*.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO.: 17-cv-03910-AT |

**PLAINTIFFS' REPLY TO THE DEFENDANT-INSURER'S
BRIEF IN OPPOSITION TO THE PLAINTIFFS' MOTION TO STRIKE,
OR, ALTERNATIVELY, TO DISMISS THE DEFENDANT'S
"AMENDED ANSWER AND COUNTERCLAIMS"**

Plaintiffs' Motion to Strike, or alternatively, to Dismiss the Defendant's (the "Insurer") "Amended Answer and Counterclaims" [Dkt. 76] should be granted for three fundamental reasons. First, the Amended Answer and Counterclaims were improperly filed, without the permission or leave required by the Federal Rules. The Court's Amended Scheduling Order [Dkt. 70] provided, neither explicitly nor implicitly, any such prior approval. Second, the pleading fails to state legally

cognizable claims for fraud, conspiracy, or attorney's fees under Georgia law.[1] Third, the compulsory "counterclaims" were advanced nearly one year too late.

The Insurer's most recent Brief is a second effort to splatter the record with insinuations of wrong-doing by its insured. This is a transparent effort, by the Insurer, to avoid mold remediation expenses that it specifically agreed to assume.[2] Plaintiffs' action for breach of contract, reformation, and bad faith, was brought over one year ago, for property damage and business losses at its Hilton Hotel, 5993

---

[1]  Plaintiffs' 12(b) (6) motion is not moot because Plaintiffs also filed an Answer to the Insurer's counterclaims, out of caution as to the appropriate response date.  *Mountain States Financial Resources Corp. v. Agrawal,* 777 F. Supp. 1550, 1551-52 (W.D. Okl. 1991), dealt directly with this issue.

> Plaintiff ... argues that pursuant to Rule 12(b), a motion to dismiss must be filed prior to a responsive pleading.  Defendants' answer was filed on the same date as their motion to dismiss, and therefore, plaintiff argues, the motion to dismiss was not *prior* to the responsive pleading. ... In this case, the motion to dismiss was filed contemporaneously with the filing of the answer, and the answer contained, as defenses, all of the defenses raised in the motion to dismiss. The Court finds that defendants' motion to dismiss is timely.

*Accord Alabama ex rel. Melissa Hall* v. *Oxford Emergency Medical Services Inc.*, 2018 WL 5112000 (N.D. Ala. October 19, 2018)(physical precedent). *Veltre v. Sliders Seaside Grille, Inc.*, 2016 WL 524658 at *1 (M.D. Fla. Feb. 10, 2016), cited by the Insurer is inapposite.  A simultaneously filed motion is not "moot;" some Circuits treat the 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.  *E.g., Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

[2]  The Insurer has attached multiple "exhibits" to its responsive Brief.  Curiously, the Insurer notes that these "exhibits are not necessary to respond to Plaintiffs' Motion to Dismiss."  For this reason, alone, the "exhibits" should be struck.  Additionally, these "exhibits" are unverified, unauthenticated, and, clearly, not admitted in evidence.  The Insurer is attempting to try this case on "allegations" and self-serving "exhibits."

Peachtree Industrial Boulevard, Norcross, Georgia, caused by mold and water damage. The claimed losses are specifically covered under two policies issued by the Insurer. Contrary to the bald, unsupported assertions of the Insurer, the policies issued, for which the Plaintiffs paid dearly, expressly provide coverage for mold damage. The risk of mold and the need for remediation for water and mold damage are among the risks for which the Plaintiffs purchased insurance. Now, faced with exposure for the very risk that the Insurer agreed to assume, the Insurer seeks to use belatedly asserted, facially insufficient counterclaims as a litigation tactic to avoid having to pay the claim.

A cursory review of the more than nine hundred reported federal cases in which the Insurer is a party--often for failing to meet its contractual obligations as an insurer--shows that the claims of "fraud" against its disappointed insureds is a common weapon in its defense toolbox.[3]

### I. ARGUMENT AND CITATION OF AUTHORITY

Each attempted "counterclaim" fails to state a claim for relief. Each attempted "counterclaim" was filed in a manner contravening the Federal Rules.

---

[3] *See, e.g. Violet Realty, Inc. v. Affiliated FM Insurance Company,* 267 F.Supp.3d 384, 384 (W.D.N.Y. 2017) (counterclaims for fraud and reimbursement asserted, after high rise fire loss and suit for bad faith failure to indemnify); *RSBI Aerospace, Inc. v. Affiliated FM Insurance Co.*, 49 F.3d 399 (8th Cir. 1995) (suit on fire claim met with "fraudulent misrepresentation" counterclaim that survived summary judgment); *Chemical Bank v. Affiliated FM Insurance Co.,* 1993 WL 526230 (December 14, 1993 S.D.N.Y.).

### A. The Insurer's "Amended Answer and Counterclaims" Were Not Properly Filed.

The "Amended Answer and Counterclaims" were, admittedly, not filed after the grant of leave of the Court. The Court's Amended Scheduling Order [Dkt. 70] does not, either explicitly or implicitly, grant leave for the pleading, particularly belated "counterclaims." The first fatal flaw in the Defendant's amended pleading is its failure to obtain leave (Rule 15) or permission (Rule 13). The Amended Scheduling Order [Dkt. 70] granted the Parties the ability to seek "*leave to amend pleadings*" through October 1, 2018. [Emphasis supplied.] It, plainly, did not grant any such leave, which requires a factual and legal showing under FRCP 13(e) or FRCP 15. The Amended Scheduling Order did ***not*** provide "leave to amend pleadings" through October 1, 2018. It provided a deadline for *seeking* leave.

Even if the Amended Scheduling Order were to be construed to grant permission to submit an amended answer without seeking leave under Rule 15, the Amended Scheduling Order does not give the Insurer free reign to ignore the plain language of Rule 13. It is certainly possible to amend an Answer by adding or dropping a defense without asserting a counterclaim. If, however, a counterclaim is to be added, FRCP 13(e)[4] requires that permission be sought and obtained. AFM

---

[4] "The court ***may permit*** a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." [Emphasis supplied.]

knows this, having unsuccessfully brought a Motion seeking Rule 13 permission in another case involving similar circumstances. *See, e.g. Chemical Bank v. Affiliated FM Insurance Co.,* 1993 WL 526230 (December 14, 1993 S.D.N.Y.). Yet AFM's responsive Brief is strangely mute on the mandate of Rule 13. For some reason, AFM appears to believe it is free to ignore Rule 13 in this case. The failure to seek such permission justifies dismissal of its counterclaims.

**B. Even Accepting, *Arguendo*, the Insurer's Unauthenticated Allegations, the Insurer Has Not, and Cannot, Adequately State Counterclaims for Fraud, Civil Conspiracy, or Attorneys' Fees.**

As shown below, each of the "counterclaims" now asserted by the Insurer is either not recognized under Georgia law or is inadequately pled in the proffered amendment.

**1. The Insurer Has Not Adequately Pled Fraud, Either with "Particularity" or with respect to "Injurious Reliance."**

Plaintiffs and the Insurer agree that "[t]o establish a claim for fraud under Georgia law," the aggrieved party must prove "justifiable reliance" on the alleged misrepresentation. *Engelman v. Kessler*, 340 Ga. App. 239, 246 (2017).

(a) ***The "Injurious Reliance" Required of a Commercial Insurer***. In its Brief, the Insurer ignores case authority that is directly contrary to its position. In the insurance claim context, and specifically in the case at bar, "disbelief" of a claim by an insurer is not "reliance;" such a theory "turns the notion of reliance on its head

by characterizing disbelief and denial of [a] claim as reliance." *Truck Insurance Exchange v. Kafka,* 911 F. Supp. 313, 315 (N.D. Ill. 1995). In *Truck Insurance*, acknowledged by the *Felman* court (2011 WL 4546811 SD. W. Va. September 29, 2011), but uncited in the Insurer's Brief, the court granted the insured's motion for summary judgment on an insurer's common law fraud claim. Applying Illinois common law, the *Truck Insurance* court held that the insurer "refused to rely on the truthfulness of the claim and investigated [the insured's] involvement." *Id.*

AFM cites to *J.C. Wycoff &Assocs. V. Standard Fire Ins. Co.*, 936 F.2d 1471 (6th Cir. 1991) for the proposition that "courts have held that an insurer can show detrimental reliance by demonstrating that it undertook (and incurred costs during) the investigation and adjustment of a fraudulent claim." [Dkt. 78 at 11]. This assertion fundamentally misconstrues the *Wycoff* decision, which holds instead that under Michigan law, it is not necessary to prove reliance in order to establish an insurer's defense based on alleged fraud by an insured. 936 F.2d 1474, 1484 (6th Cir. 1991). Georgia law, on the other hand, requires justifiable reliance to be alleged and proven in order to sustain a claim for fraud.

Plaintiff acknowledges that the *Felman* decision cited by AFM and the *Truck Insurance Exchange* decision cited above appear to be at odds. Neither Georgia courts nor the Eleventh Circuit appear to have ever addressed the issue.

Plaintiff submits that *Truck Insurance Exchange* is more persuasive than the unreported decision from the Southern District of West Virginia. *Felman* is factually distinguishable, as the insurer in that case had actually advanced five million dollars to its insured on the claim, whereas AFM has advanced no such funds.

As noted above, AFM's assertion of this counterclaim appears to be part of a routine practice of using its superior economic resources to bully insureds into accepting less for their claims than those claims are worth by asserting a counterclaim for fraud as a litigation tactic. Investigation costs incurred by an insurer because it does not believe representations made by an insured, and in seeking to disprove them, cannot be said to have been incurred in "reliance" on the insured's representations. It is precisely because the insurer does not rely on the insured's representations that the insurer incurs those costs. Finally, as articulated below, the face of AFM's pleadings show that AFM did not incur its alleged damages -- investigation costs – in justifiable reliance on Plaintiffs' alleged misrepresentations as of the date of the alleged discovery of water and mold damages in Plaintiffs' hotel.

(b) ***The Particularity Required of a Commercial Insurer.*** Contrary to the Insurer's assertion, Paragraph 27 of the "counterclaims" does not "detail" with

"particularity" any "evidence." Rather, the allegations demonstrate the very risk of mold and water damage that the Plaintiffs' attempted to insure against under the auspices of the Insurer's policy. Each of the single-spaced "bullets" in the Insurer's Brief is indicative of the risks that the Insurer accepted, for which it was paid, and which it now seeks to avoid.

The Insurer's argument that "[s]imply put, had Plaintiffs told the truth from the beginning," it "would not have incurred these costs" is patent nonsense. Commercial insurers routinely incur costs investigating claims submitted by insureds as part of their standard business practices. If the Insurer "relied on Plaintiffs' representations," it would not have retained "four outside consultants" and incurred over $500,000 in costs trying to disprove Plaintiff's representations. The Insurer incurred those costs precisely because the Insurer was not relying on Plaintiffs' representations. AFM has failed to plead justifiable reliance adequately in its so-called counterclaim for fraud.

Further, AFM does not contend that Plaintiffs fabricated damages that do not exist. Rather, AFM contends Plaintiffs falsely represented the date on which they became aware of those damages. [Doc. 73, p. 19-24]. While Plaintiffs deny that they fraudulently represented the date they became aware of the extensive water and mold damages presented to the Insurer in the proofs of loss, AFM's

allegation that they falsely represented that date must be taken as true for purposes of this Motion.  Taking that allegation as true, AFM's contention that it has incurred investigation costs because Plaintiffs misrepresented the date of the discovery of the damages is nonsensical.  If Plaintiffs had reported discovery of water and mold damage in July or August of 2014, November of 2014, February of 2015, or March 2015 (dates of "evidence" AFM points to in support of its claim that Plaintiffs were aware of the damages earlier than represented), dates that are within the policy periods of the two policies issued by AFM [Doc. 73 at 13], AFM would still have incurred investigation costs, because investigating large claims is what commercial insurers do.  AFM's pleading is facially insufficient because the damages it seeks to collect -- investigation costs – were not caused by, or incurred in justifiable reliance on, Plaintiffs' alleged misrepresentation as to the date of discovery of covered water and mold damages.  Accordingly, AFM's "counterclaims" fail to state a claim.

    **2.    Georgia Does Not Recognize the Tort of "Civil Conspiracy" as "Derivative" of a Fraud Claim or Otherwise.**

In its responsive Brief [Dkt. 78 at 14] the Insurer admits, as it must, that under Georgia law, a "conspiracy of itself ***furnishes no cause of action***." *McIntee v. Deramus*, 313 Ga. App. 653, 656 (2012).  [Emphasis supplied.]  Faced with the

indisputable facts that (1) it has sought in its belated counterclaims to assert a tort for civil conspiracy; and that (2) there is no such Georgia tort, the Insurer now argues that civil conspiracy may exist as a "derivative" of a recognized tort.  It is unclear what "derivative" means in the context of Georgia law, but that is not what is pled in the Insurer's belated counterclaim.  The "conspiracy-as-derivative-of-an-underlying-tort" is recognized in other States, but not Georgia.  "Where it is sought to impose civil liability for a conspiracy, ***the conspiracy of itself furnishes no cause of action***." *Alta Anesthesia Associates of Georgia, P.C. v. Bouhan, Williams & Levy, LLP,* 268 Ga. App. 139, 142 (2004) [Emphasis supplied.].  The Insurer's civil conspiracy "counterclaim" fails to state a claim for relief within the meaning of Rule 12(b)(6).

> **3.   The Insurer Has Failed to Plead a Claim under O.C.G.A. § 13-6-11 for Attorneys' Fees. Its Purported Claim is a Compulsory Counterclaim. Under Georgia law, a Defendant and Plaintiff in Counterclaim Cannot Recover Fees under This Statute.**

The appellate courts of this State have uniformly held that there simply can be no counterclaim of the type attempted by the pleading now under scrutiny.  The Georgia Supreme Court, in a full bench decision, *Byers v. McGuire Properties, Inc.*, 285 Ga. 530, 540 (2009), restated the fundamental principle of black letter law that "a plaintiff-in-counterclaim cannot recover attorney's fees under O.C.G.A. § 13–6–11 unless he asserts a counterclaim which is an independent claim that arose

separately from or after the plaintiff's claim."  Recently, *Graybill v. Attaway Construction & Associates, LLC*, 341 Ga. App. 805, 810–811 (2017) unanimously held that the trial court erred in awarding attorneys' fees to the defendant under O.C.G.A. § 13-6-11 on counterclaims.

These principles have been plain since the early 1990's, "**Attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13–6–11 are not available** to a defendant in the absence of a viable independent counterclaim asserting a claim for relief independent of the assertion of the plaintiff's harassment, litigiousness and bad faith in bringing suit." *Alcovy Properties, Inc. v. MTW Investment Company,* 212 Ga. App. 102, 102 (1994), quoting *White v. Lance H. Herndon, Inc.,* 203 Ga. App. 580, 581(1992). [Citations omitted; emphasis supplied.]  AFM's counterclaims are not "independent" in any meaningful sense of the word.

AFM argues that its "fraud and conspiracy claims did not accrue until after Plaintiffs filed this suit" and that the claimed fraud "was not complete or apparent until" AFM obtained so-called discovery from third parties. [Dkt. 78 at 15]. AFM offers no evidence to support these contentions, which are belied by the facts that AFM believed it had a factual basis to assert a defense based on fraud more than a year ago when it filed its initial Answer and by the fact that the alleged damages – investigation costs – arose prior to the lawsuit being filed.  In any event,

the purported claims of fraud are compulsory counterclaims and, thus, may not serve as predicates for fee claims under O.C.G.A. § 13-6-11.

### 4. The Insurer Delayed the Filing of its "Amended Answer and Counterclaims."

The Insurer's responsive Brief does not address why it failed to assert its compulsory counterclaims in its initial Answer. The Insurer never addresses the issue of what it knew at the time when the claims should have been filed.

### 5. Plaintiffs Will Be Prejudiced by the "Amended Answer and Counterclaims."

Plaintiffs will be unfairly prejudiced by AFM's attempted amendment. AFM believed when it filed its original Answer that it had a factual basis to assert a defense based on the Plaintiffs' alleged fraud. The "damages" it contends flowed from that alleged fraud, investigation costs, had already been incurred. Yet AFM waited, without justification, for nearly a year to assert its counterclaims. AFM then chose to file those counterclaims immediately after the Court and Special Master agreed to an entirely new scheduling order, without disclosing to the Court or the Special Master that they were about to submit counterclaims that would dramatically increase the scope and issues in dispute in this case. As examples, but by no means an exhaustive list, AFM's fraud counterclaim will require additional written and oral discovery as to the damages AFM has allegedly suffered. The civil conspiracy claim

will require additional written and oral discovery into the communications between Plaintiffs regarding the reasons for their cooperation in the prosecution of the claim (which have nothing to do with a conspiracy, but were dictated by the nature of an insurance program designed by AFM at the request of Plaintiff Crestline, the manager of the hotel, for the benefit of the owners of the hotels it manages, including Plaintiff Sky Harbor).

This expanded discovery will require further amendment of the Amended Scheduling Order entered just before the Counterclaims were filed and will introduce new issues for summary judgment and trial, adding cost and expense to the litigation.  This delay and increased cost is prejudicial.  Unlike the circumstances considered in the cases cited by AFM (*Emess Capital, LLC v. Rothstein,* 2012 WL 13001838 at *7 (S.D. Fla. May 2, 2012) quoting *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391–92 (5th Cir. 1981) (finding no prejudice because civil conspiracy count similar to prior RICO claims)), the addition of fraud counterclaims commences a new legal war, not simply a new battle.

Moreover, AFM is relying on an email authored by Plaintiffs' current lead counsel to support its civil conspiracy claim [Dkt. 73, pp. 26-27, Exhibit 28 thereto], raising the specter that AFM will try to make the undersigned a witness in these proceedings.  The undersigned was not lead counsel for the Plaintiffs a

year ago when, if at all, these counterclaims should have been raised. To inject a counterclaim at this late date for the purpose of attempting to create a conflict for Plaintiffs' chosen counsel is clearly prejudicial. Moreover, this is not the first time AFM has unsuccessfully attempted such a tactic. In *Chemical Bank v. Affiliated FM Insurance Co.,* 1993 WL 526230 (December 14, 1993 S.D.N.Y.) [Magistrate Report and Recommendation], AFM sought permission to amend its Answer and serve a belated counterclaim for fraud against its insured pursuant to FRCP 13 and FRCP 15 (the very Motions AFM chose not to file in this case). AFM's motions were denied, because of prejudice, delay, and the fact that **"many of the issues raised by the counterclaims are already contained within the affirmative defenses. The primary purpose of the proposed amendment, therefore, can only be to precipitate the disqualification of plaintiffs' counsel**." *ld.* at *3. [Emphasis added].

## II. CONCLUSION

Plaintiffs' Motion to Strike, or in the alternative, Motion to Dismiss, should both be granted. The Court's Amended Scheduling Order did not free AFM to disregard Rule 13. Most importantly, AFM's allegations of "fraud," "conspiracy to commit fraud," and for attorney's fees, seemingly drawn from its standard defense playbook, fail even to come close to the required elements of

proper Georgia claims.  Plaintiffs' Motions should be granted.

This 26th day of October, 2018.

                Respectfully submitted,

                **HASSON LAW GROUP, LLP**

                */s/ **Keith S. Hasson**_____*
                Keith S. Hasson
                Georgia Bar No. 336383

3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: 678-701-2869

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTIOIN FILE |
| *vs.* | ) ) | NO.: 17-cv-03910-AT |
| AFFILIATED FM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## **LOCAL RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 point.  The Motion has also been prepared in compliance with the margin specifications and page limitation provisions of such Rules.

This 26th day of October, 2018.

**HASSON LAW GROUP, LLP**

*/s/ Keith S. Hasson*_____
Keith S. Hasson
Georgia Bar No. 336383
Michael F. O'Neill
Georgia Bar No. 553740

3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: 678-701-2869

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SKY HARBOR ATLANTA NORTHEAST, LLC, and CRESTLINE HOTELS & RESORTS, LLC. )<br><br>Plaintiffs, )<br><br>*vs*. )<br><br>AFFILIATED FM INSURANCE COMPANY, )<br><br>Defendant. ) | CIVIL ACTION FILE<br>NO.: 17-cv-03910-AT |

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2018, a copy of the within and foregoing *Plaintiffs' Reply To The Defendant-Insurer's Brief In Opposition To The Plaintiffs' Motion To Strike, Or Alternatively, To Dismiss The Defendant's "Amended Answer And Counterclaims"* was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

*James V. Chin, Esq.*
*Dustin C. Bounds, Esq.*
*Amanda D. Proctor, Esq.*
***CARLTON FIELDS JORDEN BURT, P.A.***

*1201 West Peachtree Street*
*Suite 3000*
*Atlanta, Georgia 30309*

**HASSON LAW GROUP, LLP**

*/s/ Keith S. Hasson*_____
Keith S. Hasson
Georgia Bar No. 336383
Michael F. O'Neill
Georgia Bar No. 553740

3379 Peachtree Road, N.E.
Suite 625
Atlanta, Georgia 30326
Telephone: 678-701-2869