## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SKY HARBOR ATLANTA
NORTHEAST, LLC, and CRESTLINE
HOTELS & RESORT, LLC,

      Plaintiffs/Counterclaim
      Defendants,

         v.

AFFILIATED FM INSURANCE
COMPANY

      Defendant/Counterclaim
      Plaintiff.

**CIVIL ACTION FILE**

**NO. 1:17-CV-03910-JPB**

## <u>PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/COUNTERCLAIM-PLAINTIFF'S COUNTERCLAIM</u>

      Plaintiffs/Counterclaim Defendants SKY HARBOR ATLANTA NORTHEAST, LLC ("Sky Harbor") and CRESTLINE HOTELS & RESORT, LLC ("Crestline") (collectively, "Plaintiffs" and/or "Counterclaim Defendants") hereby file this Answer to Defendant/Counterclaim Plaintiff AFFILIATED FM INSURANCE COMPANY's (hereinafter, "AFM's" and/or "Defendant's" and/or "Counterclaim Plaintiff's") Counterclaims, contained in the Amended Answer, Affirmative Defenses, and Counterclaims of Defendant Affiliated FM Insurance Company, filed September 7, 2018, as follows:

## RESPONSE TO ENUMERATED COUNTERCLAIM ALLEGATIONS

Plaintiffs respond to the individually numbered paragraphs of AFM's Counterclaims as follows:

1.      Plaintiffs admit to the allegations contained Paragraph 1 of Defendant's Counterclaim.

2.      Plaintiffs admit to the allegations contained in Paragraph 2 of Defendant's Counterclaim.

3.      Plaintiffs admit to the allegations contained in Paragraph 3 of Defendant's Counterclaim to the extent that Sky Harbor was the owner of the Hotel at all relevant times, from approximately November 2013, to approximately May 2019.  Plaintiffs deny the rest of the allegations contained therein.

4.      Plaintiffs admit to the allegations contained in Paragraph 4 of Defendant's Counterclaim, except to the extent that the allegation, "having . . . participated without objection in the instant action", is vague and ambiguous. Plaintiffs have participated in this action thus far without objection to: the Court's subject matter jurisdiction; this Court being the proper venue for the instant action as currently pled; and this Court's personal jurisdiction over the current parties. Plaintiffs cannot admit or deny the rest of the allegations in this paragraph as the vague and ambiguous phrase identified above is overbroad and lends itself to multiple interpretations.

5.     Plaintiffs admit to the allegations contained in Paragraph 5 of Defendant's Counterclaim.

6.     Plaintiffs admit to the allegations contained in Paragraph 6 of Defendant's Counterclaim.

7.     Plaintiffs admit that the purchase price for the Hotel under the real estate purchase and sale agreement between the seller and buyer, Sky Harbor, was $17.8 million.  Plaintiffs can neither admit nor deny the remaining allegations in Paragraph 7 because they are vague and ambiguous and, therefore, Plaintiffs deny them.

8.     Plaintiffs admit to the allegations contained in Paragraph 8 of Defendant's Counterclaim to the extent that Crestline agreed to manage the Hotel pursuant to the terms of the Management Agreement, with Sky Harbor, that it executed, effective October 18, 2013.  Plaintiffs cannot admit or deny the rest of the allegations in this paragraph as the phrase "manage" lends itself to multiple interpretations and therefore is vague and ambiguous.

9.     Plaintiffs admit to the allegations contained in Paragraph 9 of Defendant's Counterclaim.

10.     Plaintiffs admit to the allegations contained in Paragraph 10 of Defendant's Counterclaim.

11.    Plaintiffs admit to the allegations contained in Paragraph 11 of Defendant's Counterclaim.

12.    Plaintiffs admit to the allegations contained in Paragraph 12 of Defendant's Counterclaim.

13.    Plaintiffs admit to the allegations contained in Paragraph 13 of Defendant's Counterclaim.

14.    Plaintiffs admit to the allegations contained in Paragraph 14 of Defendant's Counterclaim to the extent that AFM communicated with Plaintiffs over the next fifteen months.  Plaintiffs cannot admit or deny whether AFM communicated "continuously" during this period because the term is vague and ambiguous and subject to multiple interpretations.  Plaintiffs deny the remainder of the allegations in this paragraph—specifically, that AFM's purpose for all of those communications was to "investigate the claim."

15.    Plaintiffs admit that: "On February 11, 2016, Crestline submitted a Sworn Statement in Proof of Loss to AFM."  Plaintiffs admit that: "On March 11, 2016, Sky Harbor submitted [a] . . . Sworn Statement in Proof of Loss to AFM (collectively, the "Proofs of Loss").  Plaintiffs deny the remainder of the allegations in this Paragraph as the Proofs of Loss were not identical in all aspects.

16.    Plaintiffs admit that the Proofs of Loss estimated approximately $20 million in losses that appeared related to water and mold damage to the Hotel.

Plaintiffs admit that Plaintiffs discovered, in approximately September 2015, the extensive, widespread, and severe water damage and mold to the Hotel that is the subject of the Proofs of Loss.  Plaintiffs deny the remainder of the allegations in Paragraph 16 as the phrases "alleged" and "allegedly", in the context used (seeking another to admit or deny) and the characterization of the Proofs of Loss, are vague, ambiguous, and misleading, and, regardless, the documents speak for themselves.

17.    Plaintiffs admit that, following discovery of the extensive, widespread, and severe water damage and mold to the Hotel in September 2015, Plaintiffs had a third party consultant Liberty Building Forensics Group ("Liberty") identify and document the extent of the mold and water damage to the Hotel and investigate the cause, among other things.  Plaintiffs attached to the Proofs of Loss a report prepared by Liberty that described problems at the hotel as set forth in said report.  Plaintiffs deny the remainder of the allegations in paragraph 17.

18.    Plaintiffs admit that, in the Proofs of Loss, Plaintiffs identified business interruption losses that appeared related to the water and mold damage to the Hotel. Plaintiffs cannot admit or deny the remainder of the allegations in Paragraph 18 as they are vague and ambiguous as to the time period—whether these allegations, by their placement following paragraphs regarding the Proofs of Loss and use of the term "further" intends to refer to the Proofs of Loss or some other unspecified point in time.

19.     Plaintiffs admit that, at all times during the claim investigation, Plaintiffs maintained that they discovered extensive, widespread, and severe water damage and mold to the Hotel in approximately September 2015.  Plaintiffs deny that all Subparagraphs to Paragraph 19 provide examples of Crestline and Sky Harbor maintaining, at all times during the claim investigation, the date that they discovered damage to the Hotel.

a.  Plaintiffs admit the allegations contained in Sub-Paragraph 19, a.

b.  Plaintiffs admit that, on or about September 22, 2015, one or more individuals affiliated with AFM, Crestline, and Sky Harbor visually observed rooms on the Ninth and Tenth Floors of the Hotel and one or more representatives from Crestline and/or Sky Harbor indicated that the extensive, widespread, and severe mold was discovered in approximately September 2015, during renovations being performed by the general contractor, Algiere Construction Services, Inc. ("Algiere"). Plaintiffs are unable to admit or deny the remainder of the allegations in Paragraph 19, b.

c.  The allegations are vague and ambiguous and therefore Plaintiffs must deny the allegations in Paragraph 19, c because Exhibit 2 appears to be an email from AFM to Plaintiffs that acknowledges Marsh's September

21, 2015 loss notice sent via email and describes it as "mold [that] was discovered during renovation to hotel rooms."

d.  Plaintiffs admit that the Proofs of Loss, submitted by Crestline on 2/11/2016 and Sky Harbor on 3/11/2016 state: "In September 2015, while beginning renovations on the top two floors, mold and water damage was discovered."  Plaintiffs deny that the Proofs of Loss were "identical" in all respects and otherwise deny any remaining allegations contained in Paragraph 19, d.

e.  Plaintiffs admit that Exhibit 3 appears to be a letter from Raymond Steinbrecher, specifically noting it as on behalf of Sky Harbor, to AFM, which includes the phrases "mold damage discovered during renovations in September 2015" in one paragraph, "was not discovered until renovations to the Hotel in September 2015" in another paragraph, and "the mold growth discovered during the renovations in September 2015" in another paragraph.  Plaintiffs are unable to admit or deny the remainder of the allegations in Paragraph 19, e., and therefore deny them.

20.  Plaintiffs admit that, in the present lawsuit, Plaintiffs have maintained that they discovered extensive, widespread, and severe water damage and mold to the Hotel in approximately September 2015.  The terms "allege" and "purported"

are vague and ambiguous in this context.  Plaintiffs deny the remainder of allegations in Paragraph 20.

    a.   Plaintiffs admit that Paragraph 16 of the Complaint filed on behalf of Plaintiffs states, in part: "Renovation on the guest rooms began in September 2015 on the 9th and 10th floors. Water intrusion and mold damage to the Hilton Hotel was discovered almost immediately when the vinyl wall coverings were removed."  Plaintiffs deny the rest of the allegations contained in Paragraph 20, a.

    b.   Plaintiffs admit that, in Paragraph 19 of the Complaint filed on behalf of Plaintiffs, it paraphrases some of one of the Liberty reports wherein Liberty opined that an event causing damage to the Hotel was a rainwater event on August 22, 2015 and August 23, 2015 during which 2.2 inches of rain fell in the area of the Hotel.  Plaintiffs deny the remainder of the allegations in Paragraph 20, b.

    c.   Plaintiffs admit that Crestline's second supplemental response to AFM's Interrogatory No. 4, served on or about April 23, 2018, and verified by Pierre Donahue, General Counsel for Crestline: identifies "Jeff Miller Superintendent of Algiere Construction Services Inc.", notes "September 21, 2015", and references Crestline's Proof of Loss, dated 2/11/2016, and the attached Liberty Report dated 2/5/2016, in

order to respond to AFM's interrogatory regarding the date on which Crestline discovered damage and the person that discovered damage, subject to the objections set forth in Plaintiff Crestline Hotels & Resorts, LLC's Response to Defendant's First Set of Interrogatories, served January 24, 2018.  Plaintiffs are unable to admit or deny the remainder of allegations in Paragraph 20, c., as they are vague and ambiguous as to which set of responses to interrogatories they refer, and, therefore, Plaintiffs deny the remaining allegations in this paragraph.

21.   Plaintiffs deny the allegations contained in Paragraph 21.

22.   Plaintiffs deny that AFM requested information and documents as part of its "claim investigation."  Plaintiffs admit that AFM made some requests to Plaintiffs for information and documents regarding the condition of the Hotel, investigations into the conditions of the Hotel, and discovery of damages to the Hotel.  Plaintiffs deny the remaining allegations in Paragraph 22.

23.   Plaintiffs are unable to admit or deny the allegations in Paragraph 23 as vague and ambiguous—specifically, the date, exact request, and exact response to the request referenced herein.  On that basis, Plaintiffs deny the allegations in Paragraph 23.

24.   Plaintiffs deny the allegations contained in Paragraph 24.

25.   Plaintiffs deny the allegations contained in Paragraph 25.

26.   Plaintiffs deny the allegations contained in Paragraph 26.

27.   Plaintiffs deny the allegations in Paragraph 27—including, but not limited to, the allegation that Plaintiffs' "fraudulent misrepresentations are evidenced, in part, by the" subparagraphs to Paragraph 27.

     a.   Plaintiffs admit that Crestline found some in some guestrooms on or about October 17, 2013, approximately two years before Plaintiffs notified AFM of extensive, widespread, and severe water damage and mold to the Hotel, and during the pre-purchase due diligence phase prior to the close of escrow when Sky Harbor acquired ownership of the Hotel.  Plaintiffs admit that Exhibit 4 appears to include an email, dated 10/17/2013, from Chris Flagg to, among others, Frank Yuan, a principal at Sky Harbor, and Pierre Donahue, Crestline's General Counsel and the person that signed Crestline's Proof of Loss, that states, among other things: ". . . . Bruce Nelker found evidence of mold in some guestrooms.  Per Tony Contigiani, the GM at the hotel, the problem could be due to moisture seepage through the exterior brick façade and isolated to only one far side of the guestroom tower affecting both end-cap rooms on each floor. . ."  Plaintiffs deny the remainder of the allegations in Paragraph 27, a.

b.  Plaintiffs admit that Exhibit 3 appears to be a letter from Raymond Steinbrecher, on behalf of Sky Harbor, to AFM, date unspecified, that states, in part: "During the due diligence leading to Sky Harbor's purchase of the Hotel, representatives of Sky Harbor inspected conditions at the Hotel and did not observe any evidence of mold problems in the Hotel", referencing a Ceres, Corp. Phase I Environmental Site Assessment attached thereto.  Plaintiffs deny the remainder of the allegations in Paragraph 27, b.

c.  Plaintiffs admit that Exhibit 5 appears to be an email from Robert Algiere to Sky Harbor, dated July 29, 2014, that includes the phrase "problems like leaks, mold, etc." and discusses the quote for renovations to the Hotel, among other things.  Plaintiffs deny the remainder of the allegations in Paragraph 27, c.

d.  Plaintiffs admit that Exhibit 6 appears to include a "Conference Call Agenda", dated August 1, 2014, that notes, among other things: "Significant concerns about existing conditions at the property" and "Trying to mitigate, but solution will require significant repairs to window seals and dry rot under bathtubs."  Plaintiffs deny the remainder of the allegations in Paragraph 27, d.

e.  Plaintiffs admit that Exhibit 7 appears to include an email, dated August 1, 2014, from Chris Flagg to Frank Yuan and Jerome Yuan, among others, that appears to attach a PowerPoint, subtitled "Existing Guestroom Conditions."  Plaintiffs deny that the PowerPoint includes true and correct copies of guest reviews.  Plaintiffs admit that the PowerPoint includes some photos that appear to depict some mold or mildew in a few guest rooms.  Plaintiffs deny the remainder of the allegations contained in Paragraph 27, e., and its sub-subparagraphs i. through xiii.

f.  Plaintiffs admit that Exhibit 8 appears to be an email from Henk Pouderoyen, dated 8/19/2014, who also does business as Hotel Renovation Solutions at various times, and acted as the project manager for the Hotel's renovations at certain times, that attaches a document that includes the phrase "TBD – or hardy board… Need to review after your visit – much water damage to wall."  Plaintiffs deny the remaining allegations contained in Paragraph 27, f.

g.  Plaintiffs admit that Exhibit 9 appears to contain an email from Mr. Pouderoyen, dated August 22, 2014, that states, in part: "I just came from Atlanta, but the room that would receive the tub needs to be re-thought…  The condition of the existing tubs is such that they cannot

be left as is. They were mounted on the metal studs and suspended off the floor.  Rust to these metal studs has caused most all to sink and list into various directions and cause serious leaks."  Plaintiffs deny the remaining allegations in Paragraph 27, g.

h. Plaintiffs admit that Exhibit 10 appears to contain an email dated August 28, 2014 from Mr. Pouderoyen to, among others, Jerome Yuan and Norbert Yuan, that states in item no. 8: "The exterior is a brick veneer and only metal window frames that may need limited paint touch-ups.  ALL windows will need new seals or caulking treatment to stem water infiltration.  I contacted several painter and glazers for quotes – need more follow up."  Plaintiffs deny the remainder of the allegations in Paragraph 27, h.

i. Plaintiffs admit that Exhibit 11 appears to contain an email from Marcy Adams to Jerome Yuan, dated September 5, 2014, that states in part: "Because the tile is cracked, the water continues to get behind the caulk/grout and creates mold and mildew."  Plaintiffs deny the remainder of the allegations contained in Paragraph 27, i.

j. Plaintiffs admit that Exhibit 12 appears to contain an email from Jimmy Wei to Frank Yuan, Jerome Yuan, and Norbert Yuan, among others, that has a subject line, "[s]ome urgent and important issues of each hotel

in relation to PIP or Capex Sharing" and includes several items numbered 1-7 that, under item no. 5., at 2), states: "Tub issue followed (although it had been included in guest room, but since 20% tub need to be kept based on brand requirement, we should follow up their status."  Plaintiffs deny the remainder of the allegations in Paragraph 27, j.

k.  Plaintiffs admit that Exhibit 13 appears to contain an email from Lorrie Remington (a Senior Director of Purchasing, Design, and Construction for Junson Hospitality) to Mr. Pouderoyen, dated September 30, 2014, that states, in part: "I learned this morning that 72-112 of Hilton Norcross rooms have wood rot in the restrooms.  This is part of the scope for the GC."  Plaintiffs admit that Exhibit 13 appears to also contain an email from Mr. Pouderoyen in response to the aforementioned email, dated October 1, 2014, that states, in part: "Re: Hilton – 72 o 112 rooms of wood rot…?  We can discuss, I am aware but believe it is not wood rot, but rotted metal stubs in bathroom surround…"  Plaintiffs deny the remainder of the allegations in Paragraph 27, k.

l.  Plaintiffs admit that Exhibit 14 appears to be a proposal submitted by Finite Reimaging, a construction company, to Mr. Poudeoyen, dated

October 13, 2014, that states, in part, "Finite Reimaging is pleased to submit our proposal for the exterior water infiltration scope of work at the Hilton Northeast property. . ." that includes a "price of $292,195.00", and a breakdown set forth therein.  Plaintiffs deny the remainder of the allegations contained in Paragraph 27, l.

m. Plaintiffs admit that Exhibit 15 includes a document that appears to be a PowerPoint titled "Shareholders Meeting", dated November 3, 2014, that, following the slide titled "Budgets", includes a slide titled "Hilton Norcross", containing a "Note" that states: "2. CAPEX – façade work is $250,0000 over two years."  Plaintiffs are unable to admit or deny whether "Representatives of Sky Harbor attended a Shareholders' Meeting on November 3, 2014" at this time and therefore denies this allegation.  Plaintiffs deny the remaining allegations in Paragraph 27, m.

n. Plaintiffs admit that Exhibit 16 appears to contain an email from Mr. Pouderoyen to Coe Zeagler, Finite Reimaging, dated December 12, 2014, that states in part: "We need to address a number of potential issues that contribute water intrusion; window frame, caulking, faulting flasing and resealing the brick façade – we simple don't know which of the 4 is the greatest contributor so some testing is in order, along with

a comprehensive approach….."   Plaintiffs deny the remaining allegations in Paragraph 27, n.

o.   Plaintiffs admit that Exhibit 17 appears to contain  an email from Robert Algiere to, among others, Frank Yuan that states in part: "wanted to let you know what our findings are from this week's site visit" and lists in part, "Model Room 805 progress has started – severe mold infestation on all bathroom walls mandating complete drywall and some framing removal for replacement. Refer to attached photos."  Plaintiffs deny the remainder of the allegations in Paragraph 27, o.

p.   Plaintiffs admit that Exhibit 18 appears to contain handwritten notes, which appear to be dated February 17, 2015, and appear to identify "Room #600" at the Hotel, and appear to include a notation: "High Mold Presence Discovered Below Wallpaper."   Plaintiffs deny the remaining allegations in Paragraph 27, p.

q.   Plaintiffs admit that Exhibit 19 appears to be a Finite Reimaging report, dated March 3, 2015, that has a subtitle that includes the phrase "Water Intrusion", that states in part: "There are signs of efflorescence and mildew"; and "Exploratory investigative work was performed in Guest Room 600 and 1017.  Walls were opened in strategic areas of these guest rooms . . . We observed that the guest room walls in both rooms

were comprised of a double laminated drywall condition with the old wall covering still present at the lower layer. . . . . The double layers of drywall and wall covering act as a sponge and are retaining water which creates a breeding ground for mold." Plaintiffs admit that Exhibit 19 appears to contain an email forwarding the aforementioned report to Norbert Yuan and Jerome Yuan. Plaintiffs deny the remainder of the allegations in Paragraph 27, p.

r. Plaintiffs admit that Exhibit 20 appears to state the allegations contained in Paragraph 27, r. Plaintiffs deny the remainder of the allegations contained in Paragraph 27, r.

s. Plaintiffs admit that Exhibit 21 appears to contain an email from Robert Algiere to Henk Pouderoyen, among others, dated June 12, 2015, that states, in part: ". . . Richard has spent two days on site this week, working with specialists in the sealing and glazing industry . . . to determine to what extent this building is failing to withhold water intrusion . . ."; and notes: "Richard found, massive failure of the grout pack on the brick. . ." Plaintiffs deny the remaining allegations in Paragraph 27, s.

t. Plaintiffs admit that Exhibit 22 appears to contain an email from Frank Lin (an assistant project manager for Sky Harbor at various points in

time) to Robert Algiere, dated September 9, 2015, that states, in part, "For the MOLD REMEDITION, please allow me explain to the ownership, we will make decision within 48 hours." Plaintiffs are unable to admit or deny the remaining allegations in Paragraph 27, t., and therefore deny them.

u. Plaintiffs admit that Exhibit 23 appears to contain an email from Mr. Lin to "Jim", dated September 11, 2015, that states, in part: ". . . I wonder what is the time frame or schedule working on the 10th FL, Algiere construction is concern about the schedule. . ." Plaintiffs deny the remainder of the allegations in Paragraph 27, u.

28.     Plaintiffs can neither admit nor deny this request to the extent no time period is identified and the phrase "related" is vague and ambiguous. Plaintiffs therefore deny the allegations in Paragraph 28.

29.     Plaintiffs admit that Exhibit 24 appears to be a letter from Keith Hasson, on behalf of Plaintiffs, to James Chin, on behalf AFM, dated August 24, 2016 (following Plaintiffs' 9/21/2015 notice of claim and before AFM 1/6/2017 denial of claim), stating in part that: "On August 5th, my office produced to you via Dropbox Link some thirty-seven thousand pages of documents responsive to Affiliated FM's March 14, 2016 requests for documents. Many of these documents had previously been produced to Affiliated FM, but in order to avoid any confusion about whether

all responsive documents had been produced, my firm assembled all responsive documents in a single production, regardless of whether they had previously been produced, and Bates-numbered the production so that all parties will be able to more easily track the documents produced.  With this production we believe all requested documents have been produced, wand there is no further reason for FM to use allegations of lack of documentation as an excuse for its failure to complete its investigation and pay this claim."

30.     Plaintiffs deny the allegation in Paragraph 30.

31.     Plaintiffs admit that they provided a report from Liberty Building Forensics Group, dated February 5, 2016, with their Proofs of Loss, that lists some causes of damages and an estimated amount of the alleged damages as of that date.

32.     Plaintiffs admit that they provided a report from Liberty Building Forensics Group, dated February 5, 2016, that appears to describe an origin of the loss.

33.     Plaintiffs admit that a report by Liberty Building Forensics Group, dated November 20, 2015, bates stamped Plaintiffs025164, identifies more than one cause for water damage and mold at the Hotel.  Plaintiffs deny the remainder of allegations in Paragraph 33.

34.     Plaintiffs deny the allegations contained in Paragraph 34.

a.  Plaintiffs can neither admit nor deny the allegations in Paragraph 34,
a., because they ask Plaintiffs about attorney-client privileged
communications and work product and, for that reason, Plaintiffs deny
the allegations contained in this paragraph.

b.  Plaintiffs can neither admit nor deny the allegations in Paragraph 34,
b., because they ask Plaintiffs about attorney-client privileged
communications and work product and, for that reason, Plaintiffs deny
the allegations contained in this paragraph.

c.  Plaintiffs can neither admit nor deny the allegations in Paragraph 34,
c., because they ask Plaintiffs about attorney-client privileged
communications and work product and, for that reason, Plaintiffs deny
the allegations contained in this paragraph.

35.    Plaintiffs deny the allegations in Paragraph 35.

36.    Plaintiffs deny the allegations in Paragraph 36.

37.    Plaintiffs deny the allegations in Paragraph 37.

38.    Plaintiffs deny that they were aware of the widespread, extensive, and
severe mold and water damage at the Hotel during the due diligence period preceding
Sky Harbor's purchase of the Hotel.  Plaintiffs are unable to admit or deny the
remainder of the allegations in Paragraph 38 because they are vague and ambiguous
as to what "mold and water damage" they refer.

39.     Plaintiffs deny the allegations in Paragraph 39.

40.     Plaintiffs admit that Plaintiffs submitted Proofs of Loss identifying identical damages and enclosing identical supporting documents.  Plaintiffs deny that Plaintiffs submitted said Proofs of Loss "with full knowledge that their claims were fraudulent", and further deny that those claims were, indeed, fraudulent. Plaintiffs further deny any implicit or explicit allegations in the first sentence of Paragraph 40.  Plaintiffs cannot admit or deny the allegations contained in the last sentence of Paragraph 40 because they ask Plaintiffs about attorney-client privileged communications and work product and, for that reason, Plaintiffs deny the allegations contained in this paragraph.

41.     Plaintiffs deny any further implicit or explicit allegations in the first sentence of Paragraph 41.  Plaintiffs cannot admit or deny the allegations contained in the last sentence of Paragraph 41 because they ask Plaintiffs about attorney-client privileged communications and work product and, for that reason, Plaintiffs deny the allegations contained in this paragraph.

## RESPONSE TO COUNT I: FRAUD

42.     Plaintiffs incorporate their responses to Paragraphs 1 through 41 of AFM's Counterclaims as if each were fully and separately set forth herein.

43.     Plaintiffs deny the allegations contained in Paragraph 43.

44.     Plaintiffs deny the allegations contained in Paragraph 44.

45.     Plaintiffs deny the allegations contained in Paragraph 45.

46.     Plaintiffs deny the allegations contained in Paragraph 46.

47.     Plaintiffs deny the allegations contained in Paragraph 47.

48.     Plaintiffs deny the allegations contained in Paragraph 48.

## RESPONSE TO COUNT II: CIVIL CONSPIRACY

49.     Plaintiffs incorporate their responses to Paragraphs 1 through 48 of AFM's Counterclaims as if each were fully and separately set forth herein.

50.     Plaintiffs deny the allegations contained in Paragraph 50.

51.     Plaintiffs deny the allegations contained in Paragraph 51.

52.     Plaintiffs deny the allegations contained in Paragraph 52.

## RESPONSE TO COUNT III: ATTORNEY'S FEES

53.     Plaintiffs incorporate their responses to Paragraphs 1 through 52 of AFM's Counterclaims as if each were fully and separately set forth herein.

54.     Plaintiffs deny the allegations contained in Paragraph 54.

## RESPONSE TO PRAYER FOR RELIEF

Plaintiffs specifically deny that the Defendant is entitled to any of the "Prayer for Relief" or damages and/or relief requested in Defendant's Counterclaims, including, but not limited to, the subparagraphs identified as a. through e. following the word "WHEREFORE" at the conclusion of Defendant's Counterclaims.

Plaintiffs deny that Defendant is entitled to any relief or damages against Plaintiffs whatsoever.

## AFFIRMATIVE DEFENSES TO ALL COUNTERCLAIMS

1.      Plaintiffs deny each and every allegation, statement, matter, or thing in the Complaint unless expressly admitted herein.

**2.**      Part or all of Defendant's counterclaims fail to state a claim upon which relief may be granted.

3.      Defendant's counterclaims fail, in whole or in part, because of the doctrine of laches.

4.      Defendant's counterclaims fail, in whole or in part, because of the doctrine of unclean hands.

5.      Defendant's counterclaims fail, in whole or in part, because of the doctrine of estoppel.

6.      Defendant has waived its right to assert all counterclaims in this case by adjusting Plaintiffs' claim independent of influence by Plaintiffs or their agents and by issuing estimates based upon its own investigation of the claim.

7.      Defendant's counterclaims are barred because Defendant has failed to comply with the requirements of the policy and had unreasonably delayed and denied covered benefits.

8.      Defendant's counterclaims are the result of acts of third persons over whom these Plaintiffs have no control nor right to control.

9.      Defendant's counterclaims and its agents interfered with and prevented performance of the contractual obligations of these Plaintiffs.

10.     Plaintiffs reserve the right to raise additional defenses that subsequently may be determined to apply based upon discovery in this action or other investigation.

## **JURY DEMAND**

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE THAT ARE RAISED IN DEFENDANT'S COUNTERCLAIMS AND THIS ANSWER TO DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES.**

Respectfully submitted this 13th day of December, 2019.

*/s/ Christopher B. Noyes*

Christopher Noyes *(pro hac)*
Kabateck LLP
633 W. Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone: 213-217-5000
cn@kbklawyers.com

Michael L. Childress *(pro hac)*
Childress Loucks & Plunkett, Ltd.
11 W. Illinois, 4th Floor
Chicago, Illinois 60654
Telephone: 312-494-0200
mchildress@childresslawyers.com

Michael A. Dailey
Georgia Bar No. 203250
Anderson Dailey LLP
2002 Summit Blvd., Suite 1250
Atlanta, GA 30319
Telephone: 404-442-1800
mdailey@andersondailey.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 13, 2019, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

*/s/ Christopher B. Noyes*
Christopher B. Noyes