UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SKY HARBOR ATLANTA
NORTHEAST, LLC and CRESTLINE
HOTELS AND RESORTS, LLC,

        Plaintiffs,

    v.

AFFILIATED FM INSURANCE
COMPANY,

        Defendant.

CIVIL ACTION NO.
1:17-CV-03910-JPB

## ORDER

This matter is before the Court on Affiliated FM Insurance Company's

("Defendant") Motion for Summary Judgment [Doc. 238], Sky Harbor Atlanta

Northeast, LLC and Crestline Hotels & Resort, LLC's (collectively, "Plaintiffs")

Motion for Partial Summary Judgment to Interpret the Insurance Policies [Doc.

237] and Plaintiffs' Motion for Summary Judgment on Defendant's Fraud and

Civil Conspiracy Counterclaims [Doc. 239].  This Court finds as follows:

## PROCEDURAL HISTORY

Plaintiffs filed this insurance coverage dispute against Defendant on

September 1, 2017, in the Superior Court of Gwinnett County.  [Doc. 1-1].  On

September 27, 2017, Plaintiffs filed an Amended Complaint.  [Doc. 238-88].  After

the Amended Complaint was filed, the action was removed to this Court on

October 5, 2017.  [Doc. 1].  Defendant timely filed its Answer and Affirmative

Defenses on October 12, 2017.  [Doc. 4].  On September 7, 2018, Defendant

amended its answer to bring two counterclaims:  one asserting fraud and one

asserting civil conspiracy.  [Doc. 73].

After contentious and extensive discovery, the parties filed summary

judgment motions on June 5, 2020.  Plaintiffs filed two motions.  [Docs. 237 and

239].  In their first motion, Plaintiffs ask this Court to interpret several different

provisions of the insurance policies.  [Doc. 237].  In their second motion, Plaintiffs

argue that summary judgment is appropriate as to Defendant's fraud and civil

conspiracy counterclaims.  [Doc. 239].  In Defendant's Motion for Summary

Judgment, Defendant asserts summary judgment is proper with respect to the

entirety of Plaintiffs' Amended Complaint.  [Doc. 238].

## BACKGROUND

The Court derives the facts of this case from Defendant's Statement of

Material Facts and Plaintiffs' Statement of Material Facts.  The Court also

conducted its own review of the record.  The facts of this case, for the purpose of

adjudicating the instant motion, are as follows:

Plaintiff Sky Harbor owns the Atlanta Hilton Northeast Hotel ("the Hotel"),

which is managed by Plaintiff Crestline.  [Doc. 265-2, pp. 3-4].  Defendant, a

commercial property insurer, insures the Hotel through several policies issued to

Plaintiff Crestline.  Id. at 6.  Those policies provide, in pertinent part, that

Defendant "insures against all risks of direct physical loss or damage to insured

property except as excluded under this policy."  Id. at 166.  The policies contain

exclusions, including:

> **GROUP I.**  This policy does not insure against loss or damage
> caused directly or indirectly by or resulting from any of the
> following.  Loss or damage is excluded regardless of any other
> cause or event whether or not insured under this policy that
> contributes concurrently or in any sequence to the loss or
> damage.
>
> …
>
> 12.  **Fungus, mold or mildew**, except as provided in Section D.,
> Extensions of Coverage, Item 18.
>
> **GROUP II.**  This policy does not insure against loss or damage
> caused by the following; however, if direct physical loss or
> damage insured by this policy results, then that resulting direct
> physical loss or damage is covered.
>
> 1.  Wear and tear, deterioration, depletion, rust, corrosion,
>     erosion, inherent vice, latent defect.
>
> 2.  Defects in materials, faulty workmanship, faulty construction
>     or faulty design.

Id.  In Section D, "EXTENSIONS OF COVERAGE," the policies provide

coverage for "fungus, mold or mildew," subject to a per occurrence sublimit of

$1,000,000:

> 18. **Fungus, Mold or Mildew:**  This policy is extended to cover the direct physical loss or damage to insured property caused by or resulting from fungus, mold or mildew, when fungus, mold or mildew is the direct result of direct physical loss or damage insured by this policy.  This coverage includes any cost or expenses to clean up, remove, contain, treat, detoxify or neutralize fungus, mold or mildew from the insured property resulting from such loss or damage.

Id. at 167.

On September 21, 2015, Plaintiffs began the claims process by notifying

Defendant that mold was discovered during renovations to the Hotel.  Id. at 8.  The

next day, Defendant's representatives went to the Hotel and began investigating

the insurance claim, which Plaintiffs valued at over $20 million.  Id. at 9-10.

Defendant's investigation of the claim took more than one year.  On January 6,

2017, Defendant denied the claim and informed Plaintiff Crestline that there was

"no coverage for the claims . . . because the evidence indicates that the claimed

damage existed prior to the effective coverage" of the policies.  Id. at 23.  Plaintiffs

subsequently sued Defendant alleging that rainwater events on August 22, 2015,

and August 23, 2015, caused the damage.  [Doc. 157-2, p. 7].  It is now undisputed

that the damage to the Hotel was caused by various construction defects that have

existed since the Hotel was built.

## DISCUSSION

**A.      Legal Standard**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  A material fact is

any fact that "is a legal element of the claim under the applicable substantive law

which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d

642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue

before the court on a motion for summary judgment is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at

646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing

that no genuine issue exists as to any material fact, "and in deciding whether the

movant has met this burden the court must view the movant's evidence and all

factual inferences arising from it in the light most favorable to the nonmoving

party." Id.  After the movant satisfies this initial burden, the nonmovant bears the

burden of showing specific facts indicating summary judgment is improper

because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party."  Walker v.

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken

as a whole cannot lead "a rational trier of fact to find for the non-moving party,

there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986) (citation omitted).

Under Georgia law, insurance contracts "are interpreted by ordinary rules of

contract construction."  Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 498

S.E.2d 492, 494 (Ga. 1998).  Contract interpretation requires three steps:

> First, the trial court must decide whether the language is clear
> and unambiguous. If it is, the court simply enforces the contract
> according to its clear terms; the contract alone is looked to for its
> meaning. Next, if the contract is ambiguous in some respect, the
> court must apply the rules of contract construction to resolve the
> ambiguity. Finally, if the ambiguity remains after applying the
> rules of construction, the issue of what the ambiguous language
> means and what the parties intended must be resolved by a jury.

City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013).

6

"An insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009).  In the event of ambiguity, the insurance policy will be "construed liberally against the insurer and most favorably for the insured." Id.  Importantly,

> while an ambiguity is to be construed in favor of the insured, "this court may not strain the construction of the policy so as to discovery an ambiguity."  In other words, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists.

Id. at 265-66 (internal citation omitted).

**B.    Plaintiffs' Motion for Summary Judgment to Interpret the Insurance Policies and Defendant's Motion for Summary Judgment**

As previously stated, Plaintiffs assert the following claims against Defendant:  (1) declaratory judgment and breach of contract; (2) bad faith under O.C.G.A. § 33-4-6(a); and (3) reformation.  In the analysis that follows, the Court will determine whether summary judgment is appropriate as to any of the claims.

1.  Declaratory Judgment and Breach of Contract

In this case, both parties acknowledge that the losses claimed under the

policies incepted prior to the policy period.[1]  The issue thus presented in the

competing motions for summary judgment is whether the policies at issue cover

those losses.

Plaintiffs argue that the policies do not contain any words that specifically

exclude losses or causes of losses that initiated prior to the policy period.

Certainly, this Court agrees that the policies do not specifically state that losses

incurred prior to the policy period are excluded.  Rather, the policies simply

provide that they insure "against all risks of direct physical loss or damage to

insured property except as excluded under this policy."  [Doc. 265-2, p. 166].  In

AFLAC Inc. v. Chubb & Sons, Inc., the Georgia Court of Appeals analyzed the

meaning of "direct physical loss of, or damage to" in an all-risk insurance policy.

581 S.E.2d 317, 318-19 (Ga. Ct. App. 2003).  The court determined that the words

"loss of" and "damage to" make clear "that coverage is predicated upon a change

in the insured property resulting from an external event rendering the insured

property, initially in a satisfactory condition, unsatisfactory."  Id. at 319.  The court

---

[1] Defendant's experts and Plaintiffs' experts opined that the defects causing the
widespread mold at issue in this case have existed since the Hotel's original construction.
[Doc. 265-2, pp. 144-48].

further held that "[t]he word 'direct' as modifying the word 'physical' means only

that the change in the insured property occurred by the action of the fortuitous

event triggering coverage." Id.  The court defined fortuitous as

> [a]n event happening by chance or accident.  That which happens
> by a cause which cannot be resisted.  An unforeseen occurrence,
> not caused by either of the parties, nor such as they could
> prevent.  For purposes of an all risk insurance policy, an event
> which occurs accidentally, as a lay person, and not a technician
> or scientist, would understand it.  It is an event which happens by
> chance, unexpectedly, or without known cause; *one which is
> undesigned or unplanned.*

Id. at 319 n.5.  In sum, the court concluded that the term "direct physical loss of, or

damage to" in an insurance policy contemplates "an actual change in insured

property then in a satisfactory state, occasioned by accident or other fortuitous

event directly upon the property causing it to become unsatisfactory for future use

or requiring that repairs be made to make it so." Id. at 319.

In this case, it is clear to the Court that there was no actual change to the

condition of the Hotel which was occasioned by an accident, external or other

fortuitous event.  The undisputed evidence shows that the origin of the water

intrusion was the result of defects existing since the original construction of the

Hotel.  [Doc. 265-2, p. 147].  Here, there was no change to the Hotel resulting from

an external event that transformed the property from satisfactory condition to

unsatisfactory condition.  In effect, Plaintiffs seek insurance proceeds to cover the

9

"ordinary cost of doing business," that is, maintenance and renovation expenses. AFLAC, 581 S.E.2d at 320.  The policies of insurance at issue in this case are contracts of indemnity against loss or damage due to a fortuitous event.  "As such, they do not afford coverage for sums expended to improve or better property wholly apart from any indemnification purpose."  Id.

The policies in this case do not cover losses that were incepted prior to the policy period because the losses were not caused by an external event.  As such, to the extent Defendant seeks summary judgment as to the declaratory judgment and breach of contract claim, Defendant's Motion for Summary Judgment [Doc. 238] is **GRANTED**, and Plaintiffs' Motion for Summary Judgment to Interpret the Insurance Policies [Doc. 237] is **DENIED**.

   2.  Bad Faith Under O.C.G.A. § 33-4-6(a)

In Plaintiffs' Amended Complaint, they assert that Defendant denied the insurance claim in bad faith and are entitled to damages under O.C.G.A. § 33-4-6(a).  Defendant moved for summary judgment.

To support a cause of action under O.C.G.A. § 33-4-6(a), the insured must show that the refusal to pay the claim was made in bad faith.  Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 61-62 (Ga. Ct. App. 2015).  The insured must prove: "(1) that the claim is covered under the policy, (2) that a demand for payment was

made against the insurer within sixty days prior to filing suit, and (3) that the

insurer's failure to pay was motivated by bad faith." Id. at 62.  As explained in the

previous section, Plaintiffs' claim is not covered under the policy.  As such,

Defendant's Motion for Summary Judgment as to Plaintiffs' bad faith claim is

**GRANTED**.

    3.  Reformation

   Plaintiff Crestline is the only named insured on the insurance policies.

Asserting mutual mistake and accident in failing to list Plaintiff Sky Harbor as an

additional insured, Plaintiffs brought a reformation claim seeking to reform the

policies to accurately reflect that Plaintiff Sky Harbor is an insured.

> Reformation of a contract is an equitable remedy for correcting
> an instrument to make it express the true intention of the parties,
> where from some cause, such as fraud, accident, or mistake, it
> does not express such intention.  The remedy is not available for
> the purpose of making a new and different contract for the
> parties, but is confined to establishment of the actual agreement.
> Where reformation is sought on the ground of mutual mistake, it
> must, of course, be proved to be the mistake of both parties.

Occidental Fire & Cas. of N.C. v. Goodman, 793 S.E.2d 606, 608–09 (Ga.

Ct. App. 2016).

    Defendant argues that it is entitled to summary judgment on the reformation

claim because Plaintiffs have not identified any evidence that Defendant intended

for Plaintiff Sky Harbor to be a named insured under the policies.  In response,

Plaintiffs do not identify any evidence to support their reformation claim or

address the elements of reformation at all.  Instead, they argue that Plaintiff Sky

Harbor is already insured under the polices because the policies identify the named

insured as Plaintiff Crestline, "and its wholly or majority owned subsidiaries and

any interest which may now exist or hereinafter be created or acquired which are

owned, controlled or operated by any one or more of those named insureds."  [Doc.

265, p. 15].

Because Plaintiffs failed to identify any evidence to support their

reformation claim and failed to respond to Defendant's motion as to the

reformation claim, this Court finds that the claim is abandoned.  See Cont.

Packaging, Inc. v. Cent. Garden & Pet Co., No. 1:08-cv-03492, 2011 WL

13162306, at *27 (N.D. Ga. Mar. 31, 2011) ("[I]t is well-accepted in this district

that the failure to respond to arguments relating to a claim constitutes abandonment

of the claim.").  Moreover, as to their new theory that Plaintiff Sky Harbor is an

insured based on the already existing policy language, Plaintiffs have failed to

present evidence that Plaintiff Sky Harbor is a subsidiary of Plaintiff Crestline or

that Plaintiff Crestline owns, controls or operates Plaintiff Sky Harbor.  Ultimately,

Plaintiffs have not shown that reformation of the contract is appropriate or that

Plaintiff Sky Harbor is insured under the policies.  As to the reformation claim,

Defendant's Motion for Summary Judgment is **GRANTED**, and the claims

brought by Plaintiff Sky Harbor are **HEREBY DISMISSED**.

## C.     Plaintiffs' Motion for Summary Judgment as to the Fraud and Conspiracy Counterclaims

Plaintiffs argue that they are entitled to summary judgment as to Defendant's

fraud counterclaim.  They further argue that they are entitled to summary judgment

on the conspiracy counterclaim because its survival depends on the viability of the

fraud counterclaim.  Defendant alleges, in its fraud counterclaim, that Plaintiffs

knowingly made a fraudulent insurance claim by misrepresenting when the

damage to the Hotel occurred.  Defendant further contends that this fraudulent

claim triggered an investigation which cost Defendant over $500,000.

In Georgia, to prevail on a fraud claim, the plaintiff must show:  (1) a false

representation by defendant; (2) scienter or knowledge that the representation was

false; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable

reliance by the plaintiff; and (5) damage to the plaintiff.  Nebo Ventures, LLC v.

NovaPro Risk Sols., L.P., 752 S.E.2d 18, 22 (Ga. Ct. App. 2013).  Plaintiffs argue

that they are entitled to summary judgment because Defendant cannot show that it

justifiably relied on the false representation.  Specifically, Plaintiffs assert that the

undisputed material facts show that Defendant did not rely on their

misrepresentation because Defendant employed its own experts to investigate

Plaintiffs' insurance claim, never actually believed Plaintiffs' misrepresentation as to when the damage to the Hotel occurred and ultimately denied insurance coverage in its entirety.  In response, Defendant argues that "an insurer may show reliance by demonstrating that it undertook and incurred costs during the investigation and adjustment of a fraudulent claim."  [Doc. 259, p. 20].  The Court disagrees.

Although not cited by either Plaintiffs or Defendant, Blue Cross & Blue Shield of Georgia, Inc. v. Kell is instructive.  488 S.E.2d 735 (Ga. Ct. App. 1997). In that case, a doctor filed suit against Blue Cross and Blue Shield of Georgia ("Blue Cross") seeking insurance payments for a specific patient.  Id. at 736.  Blue Cross counterclaimed for fraud.  Id.  Blue Cross argued in its counterclaim that the doctor knew he was making false insurance claims with the intent and purpose of inducing Blue Cross to pay him.  Id.  Blue Cross further argued that it reasonably relied on these representations and suffered damage.  Id.  The trial court entered summary judgment on behalf of the doctor finding that the record failed to support Blue Cross's contention that it justifiably relied on any of the misrepresentations. Id. at 740.  The Georgia Court of Appeals agreed with the trial court and explained that the record contained evidence that showed that Blue Cross extensively evaluated the claims, refused to pay some of the claims and required

reimbursement for some claims that were previously paid.  Id.  The court also

recognized that the record showed that Blue Cross and the doctor had "extensive

correspondence" as to whether the claims should be covered.  Id.

The undisputed evidence in this case shows that Defendant cannot satisfy the

justifiable reliance element.  Like in Kell, the record contains evidence that the

parties exchanged extensive correspondence regarding whether Plaintiffs'

insurance claim was covered.  Also similar to Kell, it is undisputed that Defendant

thoroughly investigated Plaintiffs' insurance claim.  In fact, the investigation lasted

more than one year.  Finally, Defendant refused to pay the claim, just like Blue

Cross refused to pay the doctor in Kell.  Given this Georgia precedent, this Court

finds that Plaintiffs are entitled to summary judgment as to Defendant's

counterclaims.

The cases cited by Defendant, which will be addressed briefly, do not

compel a different result.  The only Georgia case cited by Defendant is Tucker v.

Colonial Ins. Co. of Ca., 395 S.E.2d 312 (Ga. Ct. App. 1990).  There, the plaintiff

filed an insurance claim against Colonial Insurance Company ("Colonial") to

recover medical bills related to personal injuries he sustained in a single-vehicle

mishap.  Id. at 313.  Colonial raised fraud as an affirmative defense and argued that

the plaintiff made false assertions to support his insurance claim.  Id. at 314.  In

one sentence, the Georgia Court of Appeals held that the jury was entitled to a

fraud jury instruction as to Colonial's affirmative defense because "[t]here was

evidence of [the plaintiff's] direct misrepresentation, [Colonial's] detrimental

reliance thereon, and damage to [Colonial] by virtue of its property pay-out and

extensive and costly investigation." Id.  Although the Georgia Court of Appeals

recognized that Colonial was damaged because of an extensive and costly

investigation, Colonial was not seeking any type of damages from the plaintiff nor

did Colonial assert a counterclaim.  Instead, the court was merely analyzing

whether the jury should be charged on Colonial's affirmative defense of fraud.  As

such, Tucker is distinguishable.  Tucker can also be distinguished because Colonial

paid some of the insurance claim, whereas Defendant in this case has not paid any

of the claim.  Like Tucker, almost all of Defendant's cases analyze whether the

insurance company must prove reliance when asserting either an affirmative

defense or seeking to void the policy.[2]  This Court thus finds them inapposite.

---

[2] Defendant cited to cases from other jurisdictions that analyzed reliance as it applies to an affirmative defense of fraud or voiding an insurance policy based on fraud.  See J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1486 (6th Cir. 1991) (analyzing fraud in the context of voiding an insurance policy under a forfeiture provision); McCullough v. State Farm Fire & Cas. Co., 80 F.3d 269, 271 (8th Cir. 1996) (analyzing whether fraud voided the insured's insurance policy and fraud as an affirmative defense); Am. Family Mut. Ins. Co. v. Schley, 978 F. Supp. 870, 877 (E.D. Wis. 1997) (stating that under Wisconsin law, it is unnecessary to show reliance on the part of the insurance company to invoke fraud provision of the insurance policy); Acuity

Case 1:17-cv-03910-JPB   Document 289   Filed 03/15/21   Page 17 of 17


For the reasons explained above, this Court finds that <u>Kell</u> is applicable to the facts presented in this case. Accordingly, Plaintiffs' Motion for Summary Judgment on Defendant's Fraud and Conspiracy Counterclaims is **GRANTED**.  **IT IS HEREBY ORDERED** that the counterclaims are **DISMISSED**.

## CONCLUSION

For the foregoing reasons, this Court **HEREBY GRANTS** Defendant's Motion for Summary Judgment [Doc. 238] and **HEREBY DENIES** Plaintiffs' Motion for Partial Summary Judgment to Interpret the Insurance Policy.  [Doc. 237].  Plaintiffs' Motion for Summary Judgment on Defendant's Fraud and Civil Conspiracy Counterclaims [Doc. 239] is also **GRANTED**.  All other pending motions [Docs. 236 and 277] are **DENIED AS MOOT**.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 15th day of March, 2021.

_____
**J. P. BOULEE**
United States District Judge

---

v. Auto Tech Auto. Inc., No. 2:09 CV 336, 2012 WL 124928, at *9 (N.D. Ind. Jan. 17, 2012) (recognizing that reliance need not be established to trigger the operation of a misrepresentation clause against the insured).